## PITCAIRN et al. v. DEVLIN.
### No. 8063.

Circuit Court of Appeals, Sixth Circuit.

May 8, 1940.

Gustavus Ohlinger, of Toledo, Ohio (Smith, Beckwith, Ohlinger & Froehlich, of Toledo, Ohio, on the brief), for appellants.

Charles Brady and Francis Gallagher, both of Toledo, Ohio (Brady & Gallagher, of Toledo, Ohio, on the brief), for appellee.

Before HICKS, HAMILTON, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

This is an appeal from a judgment upon a verdict in a suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover for personal injuries.

Appellee, a machinist of twenty-eight years' experience, had been in appellants' employ about three years, when he was injured, on October 23, 1934. On that day, the shop foreman assigned appellee and his assistant to grind in a throttle valve on an engine. After this task was completed, appellee reported for further assignment. Finding that the foreman had gone for the day, pursuant to standing instructions, he consulted the work records and reported for work upon the most urgent job which appeared to be the repair of a driving-box wedge that another machinist, Dickerson, was engaged in removing from an engine.

A driving-box wedge is about six inches wide, seventeen inches long, an inch thick at one end and two inches thick at the other, and weighs about thirty-five pounds. A liner, six by seventeen inches and a quarter of an inch thick, is riveted to one of its faces, but, in process of use, is worn thin and must be replaced.

The wedge to be repaired was placed on an iron table, and the old liner removed; and appellee was engaged in riveting a new one to the wedge when the injury occurred. Two soft steel rivets, four inches long and five-sixteenths of an inch in diameter, had been inserted, and appellee, without aid, was cutting off the excess length. His invariable practice was to use a hammer and cold chisel to make nicks in opposite sides of the rivet and then strike the part to be removed alternately in opposite directions with his hammer until it broke off. He had thus removed the excess length of one rivet, had nicked the second on one side, and was bringing his hammer down to nick the other side, when Dickerson, without any warning, placed a piece of bar iron against the rivet opposite the cold chisel. In consequence, the blow,

intended merely to nick the rivet, cut completely through it and the severed piece bounced back from the bar iron and struck appellee's right eye, causing loss of sight and other injuries. Appellee was unaware of Dickerson's intention until too late to diminish the force of his blow.

Although there is some conflict in the testimony, there is substantial evidence to support the foregoing version of the facts.

The jury found that appellee's injury was caused by the combined negligence of appellants and appellee, in the ratio of three-fourths and one-fourth, respectively, and apportioned damages accordingly.

Appellants assign as errors the denial of their motions for a directed verdict and a new trial. They contend that the force with which appellee struck the chisel and his failure to wear goggles were the sole causes of his injuries; that appellee assumed the rick incident to his work because, they assert, the dangers were obvious and well known to him; that the cause of appellee's injuries is a matter of pure conjecture and, therefore, not proper for submission to a jury; and that there is no substantial evidence that they, or anyone for whose acts they are responsible, were guilty of any negligence that contributed to appellee's injuries.

There is evidence that the blow that severed the rivet was a "tremendous wallop," but there is no evidence or suggestion, that it was any harder than those previously used, which had only nicked the rivets. There is also evidence that appellee was carrying a pair of goggles at the time but was not wearing them and that the company furnished goggles to employees upon request. There is substantial evidence that appellee had no warning that Dickerson intended to place the bar of iron against the rivet until it was too late to protect himself; and that appellee would not have consented to cut the rivet under the circumstances suddenly created by Dickerson's interference. Appellee and his assistant testified that there is no danger that the severed end of a rivet will fly off with force when appellee's method is employed.

There appears to be ample basis for the inference that Dickerson's unexpected act directly caused the severed piece of iron to bounce backward and upward into appellee's eye. We think there is substantial evidence that Dickerson's act was negligent, and that it caused appellee's injury. It must follow that appellee's negligence could not have been the sole cause of the injury, as appellants claim. It is also clear that, inasmuch as Dickerson's act was of an unusual character, and negligent, appellant cannot be held to have assumed the risk of injury. Chesapeake & Ohio Railway Co. v. Proffitt, 241 U.S. 462, 36 S.Ct. 620, 60 L.Ed. 1102; Chesapeake & Ohio Railway Co. v. De Atley, 241 U.S. 310, 36 S.Ct. 564, 60 L.Ed. 1016; Erie Railroad Co. v. Purucker, Admx., 244 U.S. 320, 37 S.Ct. 629, 61 L.Ed. 1166; Montgomery v. Baltimore & Ohio R. R. Co., 6 Cir., 22 F.2d 359; Wabash Ry. Co. v. Bcez, 6 Cir., 36 F.2d 480; Norfolk & W. Ry. Co. v. Brumfield, 6 Cir., 64 F.2d 961. In the face of the foregoing evidence, appellants' contention that the cause of appellee's injuries is a matter of pure conjecture is without merit.

Near the close of the charge to the jury, the following colloquy took place between the Court and counsel:

"Mr. Ohlinger: I think, Your Honor, that the jury should be instructed that the evidence that goggles could have been procured is uncontradicted in the case; and also that the plaintiff did not apply for goggles; that is also uncontradicted in the case.

"The Court: The court will say to the jury that that evidence, as just detailed by counsel: that plaintiff had access to goggles, and that he made no application for same, is uncontradicted in the evidence. Anything additional?

"Mr. Ohlinger: No, Your Honor.

"The Court: Any exceptions by the plaintiff? If so, specify.

"Mr. Brady: With reference to goggles, the evidence of course is uncontradicted. There was no ruling and no instruction given to plaintiff or any one else that it was necessary to use goggles in performing the work that plaintiff was engaged in performing at the time of his injury.

"The Court: The Court will say to the jury there is no rule, which appears from the evidence, of the defendant company, through its receivers, requiring the use of goggles; and there is no evidence

of any instructions to the plaintiff to use goggles in this particular instance.

\* \* \* \* \* \* \* \* \* \*

"The Court: Any exceptions by the defendants? If so, specify.

"Mr. Ohlinger: I wish to except to the charge in regard to the rule which the court just gave at the request of opposing counsel.

"The Court: You may have your exception."

Appellants' final contention is that, in the instruction to which they excepted, the Court impliedly told the jury that they must find appellants negligent in issuing no warning as to the wearing of goggles, and thereby submitted a new element of negligence.

We think these claims are unwarranted and that appellee was entitled to have the jury's attention called to a circumstance from which inferences might be drawn tending to rebut any inference of contributory negligence the jury might draw from appellants' evidence, that, though goggles were available, appellee wore none at the time of his injury.

Judgment affirmed.