## MASSEY
v.
## CHATTANOOGA STATION CO.
No. 11891.

United States Court of Appeals
Sixth Circuit.

Feb. 19, 1954.

Harry Weill, Chattanooga, Tenn. (Frazier, Roberts & Weill, Morgan & Hunter and A. B. Maxwell, Chattanooga, Tenn., on the brief), for appellant.

Joe V. Williams, Jr., Chattanooga, Tenn. (Burnet, Sizer, Joe V. Williams, Jr., Chattanooga, Tenn., on the brief), for appellee.

Before ALLEN, MARTIN and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

In this action, brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for damages for death by wrongful act, the district judge directed a verdict against the administratrix of the decedent, who met his death while in the employ of the appellee company.

Decedent, a colored porter, was engaged in his duty of washing a window in the railroad station at Chattanooga when a straight ladder, upon which he was standing in order to reach the window, slipped and caused him to fall. He died in consequence of injuries received from the fall. The appellant administratrix based her action upon appellee's negligence in failing to use ordinary care to furnish her intestate with a reasonably safe place to work and with safe appliances with which to work. Specifically, she charges negligence to appellee in supplying for the use of her intestate a long ladder which was not equipped with rubber tips, floor grips, or safety devices of any sort.

The deceased apparently had selected his own ladder from a batch of some fifteen ladders of varying lengths from twelve to eighteen feet, furnished by appellee for use by its employees. None of these ladders was equipped with safety devices. Each employee was accustomed to select his own ladder. Admittedly, the smooth terrazo floor upon which the ladder was placed by the deceased employee was dry and free of grease or other slick substance.

The district judge found that, "because of the lowness of the window and the length of the ladder, the deceased set the bottom of the ladder approximately ten feet from the wall, which placed the upper part of the ladder about ten feet from the floor"; and that he thus "set up a hazardous trap which resulted in being a death trap when he undertook to climb upon it." There was testimony that the decedent was up on the ladder some four or five rungs from the top when the accident occurred. Nevertheless, the judge

stated his understanding to be that the decedent fell "just about the time he got up on the ladder." So there is conflicting evidence upon the point.

In his remarks to the jury in directing a verdict, the judge said that if a fifteen foot ladder extended ten feet, "the ladder would stand up against the wall some eleven feet, which is proven by using Euclid's Forty-seventh Theorem." He said further: "The sum of the square of the sides of a right-angle triangle is equal to the square of the hypotenuse. So, with that we have the fifteen feet the length of the ladder as the hypotenuse; then we have one side, ten feet. The square of the hypotenuse is 225 feet; the square of the side would be 100, ten times ten. So, take that from the square of the hypotenuse, 225 feet, we have 125 feet, the square of this side, the distance up the wall. Extract the square root of that, you will have a little over eleven feet. So the ladder would have been sticking up about eleven feet to where he could get to the windows. This boy on the outside was on the step-ladder, reached the window and washed that Bon Ami off. So it looks to me * * *, outside of the failure to prove negligence in the case, * * * the reason the boy fell, * * * he had the ladder at a bad angle. When he went up * * * and got his weight on it, the ladder fell and, very unfortunately, he was killed."

The court pointed out that there was no proof or offer of proof that ladders ordinarily used for the type of work appellant's intestate was doing are equipped with rubber tips or boots; that there was no negligence upon the part of the appellee in furnishing for general use, including the activity of window washing, ladders which did not have rubber tips or boots on them; and that the sole proximate cause of decedent's injuries resulting in his death was "his own negligence in placing the ladder at such angle that it was bound to fall when he put his weight on it." However, another window washer, working on the outside of the windows, was furnished by appellee, and was using a step-ladder.

There is evidence in the record that electricians who worked at the station used ladders with safety devices on the bottoms of them. The electricians were not employees of the station company. The evidence conflicted concerning the length of the ladder used by the decedent and the distance its base was placed from the wall at the time of the fatal accident.

In all these circumstances, we think the case should have been submitted to the jury. This seems clear upon the authority of Lavender, Adm'r v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916; and Tennant, Adm'x, v. Peoria & P. U. R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520. The doctrine of these two cases has been applied by this court in Highfill v. Louisville & N. R. Co., 6 Cir., 154 F.2d 874, and other cases.

It would seem that there was sufficient evidence of negligence, in the failure of appellee to use reasonable care to furnish appellant's intestate with a safe ladder for his use while washing windows, to require submission of the issue to the jury. See Lillie v. Thompson, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73; Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282; Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Tiller v. Atlantic Coastline R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610; Williams v. Atlantic Coastline R. Co., 5 Cir., 190 F.2d 744, Boston & M. R. R. v. Meech, 1 Cir., 156 F.2d 109, certiorari denied 329 U.S. 763, 67 S.Ct. 124, 91 L. Ed. 658; Boston & M. R. R. v. Kyle, 1 Cir., 156 F.2d 112.

■ The Supreme Court made it plain in the Tennant case, supra, that trial judges are not free to set aside jury verdicts merely because "judges feel that other results are more reasonable." The same principle, of course, applies to directed verdicts. And, in Lavender v. Kurn, supra, the Supreme Court went so far as to say that, whenever facts are in dispute or the evidence is such that fair minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by

choosing what seems to them to be the most reasonable inference. Such duty in jury trials rests upon the jury and it is not incumbent upon the court to invade the province of the jury in that respect, where there is conflicting material evidence.

In a recent case, Erie Railroad Company v. Edward W. Lade, Jr., 209 F.2d 948 this court pointed out, in affirming a judgment entered on the verdict of a jury, that long experience has demonstrated that there are few absolutes in the law and that every case must be decided upon its peculiar facts.

In the circumstances of the present controversy, it is our view that controverted fact issues were presented, in consequence of which the case should have been submitted to the jury.

Accordingly, the judgment of the district court is reversed and the case is remanded for a new trial.