JOSEPH FERRARA *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.   November 7, 1958. — January 13, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence,* Employer's liability: Federal employers' liability act, place of work, protective equipment; Railroad: repair shop. *Proximate Cause. Evidence,* Relevancy and materiality.

Evidence in an action did not warrant a finding that the condition of the floor of a railroad repair shop had any causal connection with injuries sustained by a railroad employee when he was kneeling on the floor cutting a bolt under a railroad car with an acetylene torch and a metal spark bounced off the floor and struck his ear. [325]

A finding of negligence on the part of a railroad under the Federal employers' liability act toward an employee injured in its repair shop when a metal spark struck his ear as he was cutting a bolt under a railroad car with an acetylene torch while not wearing a hood covering his face and ears would have been warranted by evidence that the railroad recognized that such hoods were reasonable equipment to provide for employees doing acetylene cutting, that all the equipment used by the employee was supplied by "his boss," that on the day of the accident only goggles and gloves were supplied, that a hood was not made available to the employee either generally or on that day, that precautions for his safety beyond precautions actually taken were possible, and that cutting operations involving "some sparking" could result in the injury actually received. [327–328]

In an action against a railroad by an employee injured in its repair shop when a metal spark struck his ear while he was cutting a bolt with an acetylene torch, evidence that a hood covering his face and ears had never been supplied to him while working for the defendant was relevant to the question of its practice with respect to safety precautions and to contradict testimony that hoods were available as part of the "standard equipment" in the shop. [329]

In an action against a railroad by an employee injured when a metal spark struck him while he was cutting a bolt with an acetylene torch, an opinion of a qualified expert in the use of acetylene equipment as to what safety equipment should have been made available to the employee would be relevant on the issue of failure to provide proper equipment. [329–330]

TORT. Writ in the Superior Court dated June 30, 1955.

The action was tried before *Cahill*, J.

*Edward J. Mahan*, for the plaintiff.

*Arthur L. Brown*, for the defendant.

CUTTER, J. This is an action of tort under the Federal employers' liability act (hereinafter called the act), 45 U. S. C. (1952) § 51 et seq. The plaintiff's substitute bill of exceptions presents the question whether the trial judge correctly directed a verdict for the defendant, and also raises questions with respect to the exclusion of certain evidence. A bill of exceptions filed by the defendant presents the defendant's exception to the trial judge's action in allowing the plaintiff's substitute bill of exceptions amended to present more clearly and precisely the plaintiff's · exceptions with respect to the evidential questions.

1. The evidence is stated in its aspect most favorable to the plaintiff. The plaintiff was engaged in activities subject to the act on October 29, 1952, at the defendant's repair shop in East Cambridge. He was "cutting on a pedestal : . . bolt [under a passenger coach] with an acetylene torch" and "to do the cutting he would be on his knees, bent over supporting himself on one hand and holding the torch in his other hand." The plaintiff testified that the "first I hear one noise, bing, on the floor, and . . . my ear is catch fire." He talked to the foreman and received medical treatment, but he suffered substantial pain. There was at least temporary injury to the ear, and he was prevented from working for a time. When he returned to work, he was assigned lighter tasks.

The floor of the shop was concrete, with wooden planking next to each track. The planking where the plaintiff was working "was soaked with oil." When work started it

looked "a little bit dry," and the boards caught fire, so that water had to be pumped on them. In cutting the bolts "there will be some sparking . . . the amount . . . depends on the amount of carbon in the metal to be cut."

The plaintiff, "having qualified as expert in the use of acetylene . . . equipment, testified that in his opinion the . . . flooring . . . was unsafe." There was no evidence, however, that this condition contributed in any way to the accident, which, on the plaintiff's own story, appears to have occurred because a metal spark bounced off the floor. It would be sheer conjecture, without any basis of proved fact, to find that defects in the floor had any effect whatsoever in causing the injuries. See *Moore* v. *Chesapeake & O. Ry.* 340 U. S. 573, 577–578. There can be no recovery on the ground that the defendant furnished the plaintiff with an unsafe place to work because no causal connection has been shown between the condition of the floor and the accident. See *Wolfe* v. *Henwood,* 162 F. 2d 998, 1001 (8th Cir.); *Woods* v. *New York Cent. R.R.* 222 F. 2d 551, 552 (6th Cir.). See also *Atlantic Coast Line R.R.* v. *Craven,* 185 F. 2d 176, 180 (4th Cir.), cert. den. sub nom. *Craven* v. *Atlantic Coast Line R.R.* 340 U. S. 952; *Gill* v. *Pennsylvania R.R.* 201 F. 2d 718, 721 (3d Cir.). Cf. *Tennant* v. *Peoria & Pekin Union Ry.* 321 U. S. 29, 32–33; *Lillie* v. *Thompson,* 332 U. S. 459, 461–462.

The plaintiff also contends that the defendant negligently failed to provide him with proper equipment. The defendant's foreman testified that a "pair of goggles, a hood or helmet, fire extinguisher [,] and asbestos mittens or gloves are supplied to a man using [a] . . . cutting torch." The foreman was asked whether anything was supplied as "a protective measure for the ears." He mentioned a hood or helmet (a specimen of which was in evidence) which covered most of the ears. These helmets, he said, were "there for them [the employees] all the time" if they cared to use one. A repair shop rule provided that operators "will not start welding or cutting until they have their face protected and eyes with suitable hood or welding goggles." The foreman

testified also that the hoods were "available in the shop . . . as part of the . . . standard equipment." The plaintiff stated that on the day of this accident "one of the hoods . . . was not available to him for his use when using an acetylene torch," that he had "seen such hoods but they were not made available to him, that all the equipment he used in his work was supplied to him by his boss," who in fact supplied goggles and gloves. Another employee testified that he used, in work similar to that done by the plaintiff, "goggles, cap and gloves" but no helmet, and "that there is only one use for a hood, and that is safety and protection, but for the welder."

In *Rankin* v. *New York, N. H. & H. R.R.*, *ante*, 178, 181–182, we have reviewed very recently certain Federal cases dealing with actions under the act. It is clear (a) that the substantive law to be applied in such actions is Federal law, not Massachusetts law; and (b) that, in accordance with the "[r]ecent decisions of a majority of the Supreme Court [of the United States] . . . under . . . [the] act, very slight evidence, from which negligence might conceivably be inferred, requires the submission of the case to a jury." In the present case in applying Federal law, we intend no intimation that a similar result would be reached under Massachusetts law.

The principles of Federal law under the act applicable to the present case have been well stated in *Atlantic Coast Line R.R.* v. *Dixon*, 189 F. 2d 525, 526–527 (5th Cir.), cert. den. sub nom. *Dixon* v. *Atlantic Coast Line R.R.* 342 U. S. 830, with ample citation of authorities: (1) The "[a]ct does not make the employer an insurer of the safety of its employees while they are on duty. The employer is not held to an absolute responsibility for the reasonably safe condition of the place, tools and appliances, but only to the duty of exercising reasonable care to that end, the degree of care being commensurate with the danger reasonably to be anticipated." See *Williams* v. *Atlantic Coast Line R.R.* 190 F. 2d 744, 747–748 (5th Cir.). See also *Urie* v. *Thompson*, 337 U. S. 163, 179–180. (2) "The employer's duty . . . is to

use reasonable care . . . to the end that . . . the appliances
with which they [its employees] work, are reasonably suit-
able and safe for the purpose, and in the circumstances, in
which they are to be used. The test is not whether the
tools . . . are absolutely safe, nor whether the employer
knew the same to be unsafe, but whether . . . the employer
has exercised reasonable care and diligence to make them
safe."[1]   (3) "The employer is not required to furnish the
employee the latest, best, or most perfect appliances with
which to work, nor to discard standard appliances already
in use upon the discovery of later improvements, provided
those in use are reasonably safe and suitable." See *McGivern*
v. *Northern Pac. Ry.* 132 F. 2d 213, 218 (8th Cir.); *Atlantic
Coast Line R.R.* v. *Craven,* 185 F. 2d 176 (4th Cir.), cert. den.
sub nom. *Craven* v. *Atlantic Coast Line R.R.* 340 U. S. 952.
See also *Woods* v. *New York Cent. R.R.* 222 F. 2d 551, 552
(6th Cir.). Cf. *Wolfe* v. *Henwood,* 162 F. 2d 998, 1000–1001
(8th Cir.); *Seaboard Air Line R.R.* v. *Strickland,* 80 So. 2d
914, 917 (Fla.).

Applying these principles to the facts of the present case,
there is, at best, very slight evidence of failure of the defend-
ant to use reasonable care in supplying the plaintiff with
suitable and safe appliances. Some rather indefinite evi-
dence, however, raised an issue of fact for the jury. The
foreman's testimony that goggles and a helmet were fur-
nished to employees cutting with an acetylene torch and
that hoods or helmets were "available . . . as part of the
. . . standard equipment" in the shop was contradicted by
the plaintiff's testimony "that he had seen such hoods but
they were not made available to him, that all the equip-
ment . . . used . . . was supplied to him by his boss." On
the particular day the plaintiff was apparently supplied only
goggles and gloves. This evidence, with the evidence sum-
marized earlier in this opinion, was sufficient to permit one
or more of the following inferences to be drawn: viz. that
the defendant, through the testimony of its own foreman and

---

[1] The court, at p. 527, also refers to the duty of care on the part of the
employee and the effect of contributory negligence. See 45 U. S. C. (1952)
§ 53. This issue need not be discussed upon the present exceptions.

the ownership of hoods of the type introduced in evidence, recognized that such hoods were reasonable equipment to provide for employees doing acetylene cutting (see *Harrison Engr. & Constr. Corp.* v. *Rollison,* 109 F. 2d 602, 604 [5th Cir.]; *Massey* v. *Chattanooga Station Co.* 210 F. 2d 167, 168 [6th Cir.]); that (if the foreman's testimony was not believed) a hood was not made available to the plaintiff either generally or on the day of the accident; "that although some precautions were taken for the . . . [plaintiff's] safety, further precautions were possible . . . [so] that there was an 'evidentiary basis' for submitting the issue of the defendant's causal negligence to the jury" (*Boston & Maine R.R.* v. *Meech,* 156 F. 2d. 109, 111 [1st Cir.]; see *Lavender* v. *Kurn,* 327 U. S. 645, 652; *Chicago, R. I. & Pac. R.R.* v. *Lint,* 217 F. 2d 279, 283 [8th Cir.]); that cutting operations involving "some sparking" could result in injury to an employee's ear of the type which in fact occurred; and that the defendant (through the plaintiff's "boss") habitually "supplied to him" the equipment appropriate to the particular work. No evidence binding on the plaintiff showed that hoods were kept on the premises for the employee's use, and accessible to him, under circumstances which left it to the employee's judgment and choice whether to use one, to such an extent that his accident could be said to be caused by his own choice. Cf. *McGivern* v. *Northern Pac. Ry.* 132 F. 2d 213, 218 (8th Cir.); *Wadiak* v. *Illinois Cent. R.R.* 208 F. 2d 925, 930 (7th Cir.). Cf. also *Pitcairn* v. *Devlin,* 111 F. 2d 735, 736–737 (6th Cir.).

Despite an early statement made by the plaintiff to the defendant's claim agent on December 9, 1952, that the "cutting torch" he was using was "all right and in good shape" and that with goggles and a cap on he was "using all the precautions . . . [he] should," and "doing the work in the regular normal way," we cannot say that the evidence did not permit a finding, under the principle of the Federal cases, that the railroad failed to use reasonable care to provide, and enforce the use of, proper safety equipment. It was error to direct a verdict for the defendant.

2. It is the contention of the defendant that the plaintiff's exceptions to the exclusion of evidence are not properly before this court. In view of our decision that a verdict for the defendant should not have been directed, we need not consider the defendant's bill of exceptions, on the basis of which this contention is presented. We comment upon the exceptions to the exclusion of evidence only to the extent that similar questions seem likely to arise at a new trial.

The plaintiff and another employee were not allowed to testify that a hood had never been supplied to him while working for the defendant. This was relevant as showing the practice of the defendant with respect to safety precautions and as bearing upon the availability of hoods in the shop. See *Texas & Pac. Ry.* v. *Behymer,* 189 U. S. 468, 470; *Dudley* v. *Scandrett,* 115 F. 2d 728, 730 (9th Cir.); *Williams* v. *Atlantic Coast Line R.R.* 190 F. 2d 744, 747 (5th Cir.); *Renaldi* v. *New York, N. H. & H. R.R.* 230 F. 2d 841, 844 (2d Cir.) (conduct of two previous days); *Hoyt* v. *Central R.R.* 243 F. 2d 840, 843–844 (3d Cir.). See also *Urie* v. *Thompson,* 337 U. S. 163, 177–178; *Thompson* v. *Camp,* 163 F. 2d 396, 402 (6th Cir.); *Cronan* v. *Armitage,* 285 Mass. 520, 525. Cf. *Seaboard Air Line R.R.* v. *Strickland,* 80 So. 2d 914, 917 (Fla.). Cf. also *Robitaille* v. *Netoco Community Theatre of No. Attleboro, Inc.* 305 Mass. 265, 267. It also tended to contradict the foreman's testimony about the availability of hoods.

The plaintiff who had testified to over a year's work with an acetylene torch in the East Cambridge shop and to prior work of similar character at the defendant's Billerica shop was not permitted to testify what equipment should have been made available to him. There is indication in the bill of exceptions that the plaintiff had not at that stage qualified (as he later did to the satisfaction of the judge) as an "expert in the use of acetylene . . . equipment." The trial judge was correct on that ground in excluding the opinion testimony. The testimony, however, seems clearly relevant to the precise issue presented for decision and would have been admissible if the plaintiff had been previously found

(despite the scant evidence to that effect) to be qualified as an expert to discuss safety precautions required in connection with the use of the acetylene torch.

3. The plaintiff's exceptions are sustained and the defendant's exceptions are dismissed since it is not necessary to pass upon them.

*So ordered.*