OSMYN BAKER & others *vs.* CLARKE INSTITUTION FOR DEAF
MUTES & others.

A testator in his lifetime gave $50,000 as a permanent fund to a charitable corporation
whose charter authorized it to hold property not exceeding $200,000, and by his will
gave the residue of his estate to trustees to invest and add the income to the principal,
holding the whole until it should amount to $200,000 in gold coin, and then to pay it to
the corporation as a permanent fund. At the date of the testator's death and of the pro-
bate of his will the residue amounted in value to $140,000 in gold, but owing to out-
standing claims the estate could not be settled for more than two years, and at the time
of settlement the residue exceeded in value $200,000 in gold; but before this time the
corporation had been authorized by statute to hold property of $200,000, in addition to
what it was before authorized to hold. *Held,* that the corporation was entitled to the
whole of the residue.

BILL IN EQUITY filed January 22, 1872, by Osmyn Baker,
Jonathan H. Butler and William Allen, trustees under the will
of John Clarke, against the Clarke Institution for Deaf Mutes,
and the heirs and next of kin of the testator, praying for instruc-
tions. The case, as it appeared from the bill, answers and agreed
statement of facts, on which it was reserved by *Ames,* J., for the
determination of the full court, was as follows:

The Clarke Institution for Deaf Mutes was incorporated by
the St. of 1867, *c.* 334, which provided that it might hold prop-
erty not exceeding in value $200,000. Soon after its incorpora-
tion the testator made it a gift of $50,000, which remained undi-
minished at the time of his death. He died July 5, 1869, leaving
a will by which he gave the residue of his estate, after payment of
debts and legacies, to the plaintiffs, " as trustees, to be held and
managed by them and their successors to be duly appointed as
vacancies shall occur, in trust for the benefit of the Clarke Insti-
tution for Deaf Mutes established at Northampton. And I direct
the trustees to keep the property hereby conveyed and bequeathed
to them, securely invested in loans on mortgage of real estate, or
in such stocks, or national or state securities as they shall deem
equally safe and not less profitable ; and to add thereto and from
time to time to invest in the same manner, the net interest and
income received thereon, holding the whole as an accumulating
fund until it shall become of the amount and value of two hundred

thousand dollars in gold coin, and then to pay and make over the whole thereof to the said Clarke Institution for Deaf Mutes, to be held by said Institution as a permanent fund and endowment for the benefit of such branch of said Institution as may be established or maintained in said Northampton." The plaintiffs were also appointed executors.

The will was proved and letters testamentary issued to the plaintiffs, August 3, 1869. If the estate could have been then immediately settled, the residue, converted into gold, would have been $140,000. If the estate could have been settled at the end of one year from the date of probate, the residue would have been $204,000 in gold. In the executors' first account, filed November 21, 1870, $223,500, equivalent to $200,000 in gold, was allowed as taken to account as trustees under the will, as "residue of estate" paid over to the Institution. About $100,000 of this was held by the trustees, until after March 22, 1871, the date of the passage of the St. of 1871, *c.* 117, which authorized the Institution to hold property of the value of $200,000 in addition to the amount it was before authorized to hold, and which was passed for the purpose of enabling the Institution to hold the entire amount of the testator's gift. The estate was not and could not have been settled within two years from the appointment of executors, on account of outstanding claims. By the executors' final account the whole amount of the residue was $254,928.41, which was allowed to the executors, as taken to the account of the trustees. When the residue was so ascertained it exceeded the amount of $200,000 in gold coin, and the plaintiffs paid over to the Institution the amount and value of $200,000 in gold coin, being $223,500, and hold the remainder of the residue, as a trust fund under the will, to be paid over to the persons entitled thereto.

*G. S. Hillard & C. Delano*, for the heirs and next of kin of the testator.

*S. T. Spaulding & E. B. Gillette*, for the Clarke Institution for Deaf Mutes.

WELLS, J. There is one consideration which appears to us to be decisive of the main question in this case. The bequest is not

to the Clarke Institution directly, but to the trustees, in whom the legal right vests, in the first instance. The gift to them is of all the residue without limit or restriction.

The testator assumed, correctly, that the residue would be less than $200,000. The right to this residue vested in the trustees at the death of the testator. The executors are charged with no other or further duty or authority in relation to the residue, but to deliver or pay it over to the trustees. As trustees the plaintiffs are charged with no trust, by the will, except that for the Clarke Institution. The directions, out of which this controversy arises, are to them as trustees, prescribing the mode in which they shall administer the trust; not qualifying the trust itself.

Those directions are, 1st. To invest and hold for the purpose of accumulation; 2d. To pay over to the Clarke Institution as soon as the accumulation should reach the sum of $200,000. That sum was named, not as a measure of the gift to the trustees, but as a limit to the accumulation in their hands. That limit being reached, their second duty immediately attached; namely, to pay over the amount to the *cestui que trust*. It was not to pay $200,000 to the Clarke Institution; but to pay over the trust fund when that amount of accumulation had been reached.

It is agreed that " the estate was not and could not have been settled within two years from the appointment of executors, on account of outstanding claims." But the rights of parties are not to be affected by such delay. They must stand as if the legacy had been paid over when the right to it accrued. This applies as well between the trustees and the Clarke Institution as between the executors and the trustees. The increase of the fund therefore, whether by the addition of income from its investments, or by their appreciation in value, must result to the benefit of the party entitled to the fund itself. There is nothing in the will declaratory of any other trust, and the law will imply this.

We need not consider whether the construction would have been otherwise if the residue had exceeded $200,000 at the death of the testator. Upon the facts of this case we are satisfied that the testator did not intend to limit the amount that the Clarke

Institution should receive, but only to fix the period during which the fund should be retained for accumulation.

The only other consideration necessary to the decision relates to the point of the limited capacity of the Clarke Institution to take and hold property, at the time this legacy should have vested.

1. As regards the question of intention, we do not see that it has any bearing whatever. If it is to be assumed that the testator knew of the limitation upon the capacity of the corporation, he certainly knew also that it already held his own previous gift of $50,000. If therefore the point of limited capacity presented itself to his mind at all, he must have intended to disregard it; perhaps with the expectation that the limit would be enlarged when it became necessary. If he had intended that the former gift should be included in the total amount, he would, in some way, have made that manifest. There are no words in the will which indicate such a purpose.

2. As to the legal effect. There is no difficulty from the want of a party in whom the legacy may vest; as in *Zeisweiss* v. *James*, 63 Penn. State, 465. The trustees take the legal title in the first instance; and the *cestui que trust* is a corporation already in existence. The purposes and object of the trust are distinctly set forth. If its full execution had been found to be impossible by reason of the continued incapacity of the *cestui que trust* to take the whole fund, it might have become necessary and proper for the court to declare a resulting trust, as to the excess, in favor of the next of kin, to be implied by law. *Chamberlain* v. *Chamberlain*, 43 N. Y. 424. But we cannot doubt that the removal, by the Legislature, of such a restriction upon the capacity of the corporation, before the complete execution of the trust, will enable it to receive the whole fund intended for its benefit, although it could not do so at the time the will took effect.

But in the present case, at the time when the will took effect, the whole bequest, together with the $50,000 previously held, did not exceed the amount which the corporation was authorized to hold. It was the subsequent accumulation which gave rise to this question. In that aspect of the case the point would seem to be

whether the direction to the trustees to hold the fund until it should, with the previous property of the corporation, exceed the limit of the corporate capacity, and then pay it over to the corporation, was such a contemplated violation of law as to defeat the whole trust on the ground of illegality. Such a construction will be avoided, if any other is reasonably open. That there are others has been already suggested. But even if it was intended to evade or disregard the limit of legal capacity, we are not prepared to hold that it would render the bequest invalid, either in whole, or for the excess. Indeed, until the arrival of the time for paying over the fund, it cannot be known that it will exceed the limit of corporate capacity. Not only an enlargement of the limit before that time, but the loss or expenditure of the fund previously acquired would enable the *cestui que trust* to receive the entire fund contemplated by the testator. Being entitled to that, the incidental increase by delay of payment would follow the principal, subject only to the right of the Commonwealth to enforce the limit of the charter.

Our decree must therefore be that the Clarke Institution is entitled to the entire fund; subject however to the payment of costs of all parties who have been brought in by the trustees to litigate these questions. *Decree accordingly.*