FRANCIS J. STRATTON & another *vs.* PHYSIO-MEDICAL COLLEGE & others.

Suffolk. April 2, 1889. — June 20, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Public Charity — Cy Pres — Costs.*

A testator provided by his will that a part of the net income of a trust fund was "to be paid semiannually to the trustees of the Physio-Medical College of Cincinnati, Ohio, to be used by the college for the promotion of the medical art, as believed in and favored by me during my lifetime, and in support of that institution, as the trustees thereof shall from time to time determine." There was no corporation of that name of which C., at whose instance the legacy was given, was president or director, as the testator erroneously supposed, but there was an unincorporated medical school in that city conducted under that name by C. for private profit, and devoted to the form of medical art believed in by the testator, in which C. lectured and taught, alone or with others; and it was this school, which ceased to exist at C.'s death, that the testator meant. A corporation called the Physio-Medical Institute, established at that place, claimed the gift. *Held*, that the gift was not a public charity; that the gift failed with the donee named; and that costs could not be allowed to the last named corporation out of the fund.

HOLMES, J. This is a bill in equity, filed June 19, 1882, brought by the son and widow of John Stratton, who allege themselves to be his heirs at law, to obtain a decree that one

fourth of the income of the residue under such will, directed by him to be paid to the trustees of the Physio-Medical College of Cincinnati, Ohio, be paid to the plaintiffs, on the ground that there is no such institution. The words of the will are, " one quarter part of the net income is to be paid semiannually to the trustees of the Physio-Medical College of Cincinnati, Ohio, to be used by the college for the promotion of the medical art, as believed in and favored by me during my lifetime, and in support of that institution, as the trustees thereof shall from time to time determine, the same to be paid to the treasurer of the institution duly authorized."

The master reports, that the testator supposed that there was a corporation of the name used by him, of which one Curtis, at whose instance he gave the legacy, was president or director; that in fact there was no such corporation in existence at the testator's death, but that Curtis lectured and taught, alone or with others, under that name; and that Curtis's medical school was the one meant. This school ceased to exist at Curtis's death, in 1881.

The income is claimed by a corporation called the Physio-Medical Institute, established at Cincinnati. Assuming that it would be possible for that corporation to take a gift to the Physio-Medical College, (*Hinckley* v. *Thatcher*, 139 Mass. 477, and *Tucker* v. *Seaman's Aid Society*, 7 Met. 188, 209,) it could not do so in the absence of evidence appropriating to it a name which on its face denotes a different body. *Minot* v. *Boston Asylum and Farm School*, 7 Met. 416. *American Bible Society* v. *Pratt*, 9 Allen, 109. But the evidence has not that effect, and the master finds that the name in the will does not mean the Physio-Medical Institute. We do not think that the claim of this defendant had sufficient ground to warrant the allowance of its costs out of the fund.

The plaintiffs have argued that the income should not be applied *cy pres.* The Attorney General, who has been made a party defendant, makes no argument that it should be so applied. The attempt of the Physio-Medical Institute to raise the question by an amendment to its answer was disallowed, and it did not seek to reopen the matter at the hearing before us. In the absence of argument, we see no sufficient reason for directing a scheme to be framed.

In the first place, it does not appear that the will creates a public charity. It does not purport to found an institution, as in *Tainter* v. *Clark*, 5 Allen, 66, *Attorney General* v. *Lonsdale*, 1 Sim. 105, and *Russell* v. *Allen*, 107 U. S. 163, but to give the fund to one already in existence, and having a determinate character. It would seem that neither Curtis's medical school in fact, nor the supposed corporation in the mind of the testator, was a free or public school, as in *Boxford Religious Society* v. *Harriman*, 125 Mass. 321, and *Morville* v. *Fowle*, 144 Mass. 109, (see *McIntire* v. *Zanesville*, 17 Ohio St. 352,) but that they were both private pecuniary enterprises, to the support of which the trustees, that is to say, the parties interested, had power to apply the whole income. Such an enterprise is not a public charity, even if indirectly it serves charitable ends. *Attorney General* v. *Hewer*, 2 Vern. 387. *Attorney General* v. *Newcombe*, 14 Ves. 1, 7. *Attorney General* v. *Haberdashers' Co.* 1 Myl. & K. 420. See *Drury* v. *Natick*, 10 Allen, 169, 180 ; *Carne* v. *Long*, 2 DeG , F. & J. 75, 79 ; *Thomson* v. *Shakespear*, 1 DeG., F. & J. 399, 406, 408. If the will allows the fund to be applied to purposes not charitable, the gift fails as a charity. *Rotch* v. *Emerson*, 105 Mass. 431, 433. *Saltonstall* v. *Sanders*, 11 Allen, 446, 464. *Morice* v. *Bishop of Durham*, 9 Ves. 399, 406. *Ellis* v. *Selby*, 1 Myl. & Cr. 286, 299.

In the next place, we think that it appears from the facts that the gift is primarily to the trustees of the college, and that the college is in another State, that the income is to be used by the college, and that the whole of it may be used for its own support in the discretion of the trustees, as well as from the circumstances under which the will was made, that the main object is the support of the particular institution which the testator had in mind, and that the promotion in Ohio of Thompsonianism, the form of medical art believed in by the testator, was to be accomplished as incident to that object. It is immaterial to this conclusion whether the name described an existing beneficiary or not. At least it described an institution which was supposed by the testator to exist, and of which his friend was supposed to be an officer. The testator's belief as to facts has the same effect upon the construction of his language, whether his belief was right or mistaken.

Then, if the foregoing construction of the will is not too strict, even if the gift were to a public charity, probably the gift would fail upon the failure of the donee. The main doubt, if it were conceded that the gift was charitable, would arise on the question of construction. In such cases courts have gone very far in discovering and sustaining a general charitable intent distinct from the means indicated for carrying it out, or the immediate object. *Incorporated Society* v. *Price*, 1 Jon. & Lat. 498, *S. C.* 7 Ir. Eq. 260, and other cases cited in *Jackson* v. *Phillips*, 14 Allen, 539.

Thus, in case of a simple gift to an institution, if the institution is in its nature, and by its name appears to be, a mere trustee or conduit for the application of its funds to charitable purposes, the gift will not fail upon failure of the donee. *Winslow* v. *Cummings*, 3 Cush. 358. *Bliss* v. *American Bible Society*, 2 Allen, 334. *Old South Society* v. *Crocker*, 119 Mass. 1, 24. See *In re Maguire*, L. R. 9 Eq. 632. So *a fortiori*, if the objects of the charitable trust are declared by the will, and it appears that the discretion of the particular societies named is not of the essence of the gift. *Reeve* v. *Attorney General*, 3 Hare, 191, 197. *Marsh* v. *Attorney General*, 2 J. & H. 61. But if the construction of the will is settled in the sense in which we have construed the one before us, then if the donee fails, the gift fails. To that extent, at least, we may follow the late English cases with safety, and without encountering the doubts expressed in *Jackson* v. *Phillips*, 14 Allen, 539, 594, and 1 Jarm. Wills, (Bigelow's ed.) 247, 248. *Clark* v. *Taylor*, 1 Drewry, 642. *Russell* v. *Kellett*, 3 Sm. & G. 264. *Marsh* v. *Means*, 5 W. R. 815; *S. C.* 3 Jur. (N. S.) 790. *Langford* v. *Gowland*, 3 Giff. 617. *Fisk* v. *Attorney General*, L. R. 4 Eq. 521. *In re Maguire*, L. R. 9 Eq. 632. *Minot* v. *Baker*, 147 Mass. 348, 349, 350. See *Cherry* v. *Mott*, 1 Myl. & Cr. 123, 133; *Smith* v. *Oliver*, 11 Beav. 481; *Coldwell* v. *Holme*, 18 Jur. 396, 397; Tudor, Charities, (2d ed.) 225 *et seq.* And even if the donee is in existence at the date of the will, there is no absolute rule of law that prevents the charity terminating when the donee ceases to exist, although, no doubt, in such cases courts have gone still further in straining the meaning of wills, in order to uphold the supposed general intent. *Clark* v. *Taylor*, 1 Drewry, 642. *Russell* v. *Kellett*, 3 Sm. & G. 264. See *Easterbrooks* v. *Tillinghast*, 5 Gray, 17; *Baker* v.

*Clarke Institution*, 110 Mass. 88, 91.   The favor shown to charities should not be carried to the point of overriding the plainly expressed limits of a gift, whether the duration is limited in so many words or not.

As the fund in question is a part of the residue, it goes to the heirs at law and next of kin of the testator, as undevised property.   *Sohier* v. *Inches*, 12 Gray, 385.   *Lombard* v. *Boyden*, 5 Allen, 249.   *Smith* v. *Haynes*, 111 Mass. 346.   *Cummings* v. *Bramhall*, 120 Mass. 552, 558.   *Skrymsher* v. *Northcote*, 1 Swanst. 566, 570.   *Humble* v. *Shore*, 7 Hare, 247, 249.

*Decree for the plaintiffs.*

*A. A. Ranney*, (*F. Ranney* with him,) for the plaintiffs.

*A. Fiske*, (*J. Wilby* of Ohio with him,) for the Physio-Medical Institute.

*H. C. Bliss*, First Assistant Attorney General, for the Attorney General, submitted the case without argument.