LEMMA HALL, administratrix, *vs.* COLLEGE OF PHYSICIANS AND SURGEONS.

Suffolk. October 22, 1925. — November 25, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Practice, Civil,* Report. *Charity. Corporation,* Charitable.

An order made by a judge of the Superior Court on October 22, 1923, that an action in which a verdict for the plaintiff had been entered on May 5, 1922, be reported to this court for determination, was *held* to have been

within the discretionary power of the judge and, in the circumstances, a delay in the filing of the report in this court until February 25, 1925, because the judge "was incapacitated from acting as a judge," was *held* not to have been unreasonable.

The mere fact that a corporation was organized in 1880 under St. 1874, c. 375, as amended by St. 1875, c. 49, "for the purpose of establishing and maintaining a college for the prosecution and promotion of educational, scientific and medical purposes," did not of itself make the corporation a public charity: the controlling purpose of the maintenance of the corporation must be for the common and public benefit, and, if it was created by the incorporators, or thereafter was administered and maintained by their successors, for money making, it is not a public charitable corporation, even if at times it may have expended money for purposes, or rendered gratuitous services, which in common speech are called charitable.

Upon the evidence at the trial of an action of tort against the College of Physicians and Surgeons for conscious suffering and death caused by negligence of the defendant in December, 1917, it was *held*, that a finding was warranted that at that time the defendant was carried on for the private purposes of those who managed it.

TORT OR CONTRACT for conscious suffering and the death of Ethel Burrell, the plaintiff's intestate, in December, 1917. Writ dated December 5, 1918.

In the Superior Court, the action was tried before *Quinn*, J. Material evidence is described in the opinion. There were findings for the plaintiff on the count for conscious suffering in the sum of $1,775 and on the count for causing death in the sum of $3,875; and the judge reported the action to this court for determination, the parties agreeing that, if the report properly was before the court and if, as a matter of law, the defendant was a charitable institution, judgment should be entered for the defendant; otherwise, judgment should be entered on the verdicts.

The case was submitted on briefs.

*C. S. Hill & F. D. Bonner,* for the defendant.

*J. L. Sheehan,* for the plaintiff.

BRALEY, J. The action is in tort in two counts to recover damages for the conscious suffering and death of the plaintiff's intestate, alleged to have been caused by negligent medical care and treatment of the defendant's servants and agents while she was a patient, or by the negligent administration of certain drugs and medicines.

The jury on May 5, 1922, returned a verdict for the plaintiff on each count, and the case is before us on the report of the presiding judge from which it appears that at the close of the evidence the motion for a directed verdict was denied, subject to the defendant's exceptions, and at its request an order, subject to the plaintiff's exception, was entered on September 23, 1922, "that the action be reported . . . upon the question of whether or not the defendant corporation was a charitable institution within the intent of the law." The docket entries show that the draft report was not filed until October 22, 1923, and, the plaintiff's motion to dismiss the report having been denied on May 18, 1924, the report as finally settled was filed on February 25, 1925. It is urged by the plaintiff that this court is without jurisdiction, and that the report should be dismissed. But no judgment had been entered as in *Brown* v. *Grow*, 249 Mass. 495, and much of the delay apparently arose from the plaintiff's motions to extend the time for filing exceptions to the order, which were finally dismissed under a rule of the trial court on December 29, 1923, and by her motions thereafter for judgment, and to dismiss the draft report. It was discretionary with the judge whether he would report the case, and we cannot say as matter of law on the record, that there has been unreasonable delay in the extensions of time for filing the report which were necessary because the judge "was incapacitated from acting as a judge." *Lee* v. *Blodget*, 214 Mass. 374, 378. *Leland* v. *Union Commercial Travellers Association*, 233 Mass. 558. *Barnard Manuf. Co.* v. *Eugen C. Andres Co.* 234 Mass. 148, 152. G. L. c. 231, § 111. The facts in the case at bar are distinguishable from *Porter* v. *Boston Storage Warehouse Co.* 238 Mass. 298.

The report being properly before us, the remaining question is, whether as matter of law the defendant corporation was a public charity. It was organized under St. 1874, c. 375, as amended by St. 1875, c. 49. "An Act concerning associations for religious, charitable, educational and other purposes." The charter, dated November 10, 1880, states that the corporation is formed, "for the purpose of establishing and maintaining a college for the prosecution and

promotion of educational, scientific and medical purposes."
And by St. 1883, c. 153, the defendant was authorized and
empowered to confer the degree of doctor of medicine, "pro-
vided, that no degree shall be conferred without the consent
of three-fourths of the members of its faculty, and a majority
of its trustees."

The charter, however, did not of itself make the defendant
a public charity. The controlling purpose must be for the
common and public benefit, and if it was created by the
incorporators, or thereafter was administered and maintained
by their successors for money making, this essential element
is lacking even if it may at times have expended money for
purposes, or rendered gratuitous services which in common
speech are called charitable. The defendant still would be
acting within its charter powers if it charged every student
in full for tuition, and clinical patients for medical care and
treatment. *Donnelly* v. *Boston Catholic Cemetery Associa-
tion*, 146 Mass. 163. *Stratton* v. *Physio-Medical College*, 149
Mass. 505, 507. *Richardson* v. *Essex Institute*, 208 Mass. 311.

The quarterly announcement of the college for 1917–1918,
introduced in evidence, contains a schedule of full charges
for tuition. Under the title "Beneficiary" it is stated, that
"A number of acceptable persons, who give satisfactory
evidence of their inability to pay the regular college fees,
may be enrolled at [*sic*] students. . . . There will be oppor-
tunity offered for a limited number of nurses and special
assistants to earn a part of their expenses while in college.
. . . It is hoped that as many friends of the College, as are
able, will personally provide special funds to aid deserving
students. There is no object more worthy of bequest than
medical education." But with this exception the evidence of
the administration of the college, and its sources of revenue,
was entirely oral, and the credibility of the witnesses and
the weight to be given to their testimony, and inferences to
be drawn therefrom, were for the jury. *Warner* v. *Fuller*,
245 Mass. 520. Dr. Eugene Shurtleff, a physician, and his
wife, the treasurer of the college since 1916, were the princi-
pal witnesses. He testified that he had general charge of
the college, which was in full operation in 1917 performing

all the functions of a medical school, and that he was also
an officer of the North End Dispensary, a corporation which
occupied part of the building in which the college was located,
and to which students of the college were assigned.   Some
of the students visited the sick at their homes with physi-
cians, all of whom were on the staff of the dispensary, while
some were employed by the college, and that during 1917
there was an interchange of patients for treatment between
the corporations.   At that time and prior thereto there were
no fixed fees at the dispensary and those who came were
treated, whether they could or could not pay, and all moneys
received went into the treasury of the dispensary.   In an-
swer to questions by the trial judge, the witness said that
the dispensary was an advantage to the college.   It was ad-
vertised in the catalogue to make the college more attractive
to students and, while there was a great deal of charitable
work done at the dispensary, three fourths of the patients
were not charitable patients, and the remunerations of
professors were enhanced because of the dispensary, which
was not conducted for profit, although "they were ready to
receive profits and accept them any time."   The income
of the college was derived principally from fees of students,
and in part from a trust fund under the will of one David
A. Shurtleff, with some minor donations.   It was educating
men and women in the science of medicine and surgery "just
like other medical colleges and sold nothing for a profit."
But what the terms of the will were, or the nature of the
trust thereby created, or the conditions, if any, attaching
to the donations, does not appear, and the tabulations of
the treasurer for the years 1912, 1913, 1914, 1915, 1916,
1917, show only moneys received from students and pay-
ments to professors and instructors and to herself and her
husband during this period.   The treasurer also held a second
mortgage on the college property for $15,000, but was unable
to state how much money had been advanced, though she
"thought she must have given $5,000 at least."   The testi-
mony of the defendant's other witnesses tended to show
free tuition for students in some instances, and the free
treatment in all instances of patients at the college and the

dispensary. But the jury might accept or reject in whole or in part the evidence of any witness, even if uncontradicted by any evidence offered by the plaintiff. Said Mr. Justice Barker in *Hill* v. *West End Street Railway*, 158 Mass. 458, 460, "They may thus find proved a state of facts to which as a whole no single witness has testified, and which in some particular is contrary to the account given by every individual witness."

If, without deciding, it is assumed, as the defendant contends, that there was evidence that it was a public charity, yet the jury, notwithstanding, could find, under appropriate instructions, which it must be assumed were given as no exceptions were taken, that the college was conducted primarily for the private ends of those who managed it. *Whiteacre* v. *Boston Elevated Railway*, 241 Mass. 163.

In accordance with the terms of the report the plaintiff is entitled to judgment on the verdicts.

*So ordered.*