GLADYS V. BARRETT *vs.* BROOKS HOSPITAL, INC.

Norfolk. January 5, 1959. — April 3, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Corporation*, Charitable corporation. *Charity. Hospital. Evidence*, Presumptions and burden of proof, Prima facie evidence. *Words*, "Charity."

A defendant alleging the affirmative defence of charitable immunity in an action of tort has the burden of proving it. [756]

Oral testimony favorable to the party having the burden of proof, which might have been disbelieved by the fact finder, must be disregarded by this court in determining whether as matter of law the burden of proof has been sustained and a finding for that party is required. [756]

A charter of a corporation which sets forth charitable purposes as the purposes for which the corporation was created is prima facie evidence of its charitable purposes and operation in an action of tort against it and, in the absence of evidence to the contrary, requires a finding as matter of law that the affirmative defence of charitable immunity has been established. [757–758]

A Massachusetts corporation, incorporated without capital stock or any provision for the distribution of profits and having as its charter pur-

poses "Creating, establishing, and maintaining a hospital for providing medical and surgical treatment for the sick and injured and for promoting and advancing by original research and laboratory investigations or otherwise the science of medicine and surgery," was prima facie created and operated as a public charity so as to be entitled to the affirmative defence of charitable immunity in an action of tort against it, even though it charged reasonable fees for its services and it offered no proof that it was publicly recognized as a charitable institution or that the public contributed to it or that it publicly professed its charitable nature or that it was required to retain its surplus income or earnings in it and for its sole benefit or that there was a provision for accounting of its funds. [758–760]

At the trial of an action of tort against an incorporated hospital by a patient to recover for injuries sustained in a fall there, certain evidence on behalf of the plaintiff as to the patients admitted to the hospital, its finances, and its operation did not warrant a finding that it was not maintained as a public charity at the time of the plaintiff's fall, so that charter provisions of the hospital showing prima facie that it was created and being maintained as a public charity established the affirmative defence of charitable immunity as matter of law. [760–762]

Tort. Writ in the Superior Court dated May 16, 1952.

The action was tried before *Collins*, J.

*Andrew B. Goodspeed*, for the defendant.

*Reuben H. Nitkin*, for the plaintiff.

Wilkins, C.J. In this action of tort, the plaintiff, a patient at the defendant hospital, was hurt in a fall from an X-ray table, in circumstances which would warrant the verdict the jury returned in her favor, unless the defendant should be ruled as matter of law to have established the defence of charitable immunity. The case is reported upon the correctness of the judge's rulings in denying the defendant's motions for a directed verdict and for entry of a verdict for the defendant under leave reserved.

We are not asked to renounce the doctrine of charitable immunity set forth in *McDonald* v. *Massachusetts Gen. Hosp.* 120 Mass. 432, and reaffirmed by this court many times, on the last three occasions in rescript opinions. *Roosen* v. *Peter Bent Brigham Hosp.* 235 Mass. 66. *Kidd* v. *Massachusetts Homœopathic Hosp.* 237 Mass. 500. *Foley* v. *Wesson Memorial Hosp.* 246 Mass. 363. *Young* v. *Worcester,* 253 Mass. 481. *Glaser* v. *Congregation Kehillath Israel,* 263

Mass. 435. *Bearse* v. *New England Deaconess Hosp.* 321 Mass. 750. *Mastrangelo* v. *Maverick Dispensary,* 330 Mass. 708. *Simpson* v. *Truesdale Hosp. Inc., post,* 787. In previous decisions we have indicated as firmly as we can that any abolition of this rule must be by the Legislature. The plaintiff contends that "the defendant hospital is not a charitable institution," apparently as matter of law on the evidence, and in any event that the jury's verdict was right. We recognize that the defendant has the burden of proof upon its affirmative defence of charitable immunity. See *White* v. *Central Dispensary & Emergency Hosp.* 99 F. 2d 355, 358 (Ct. App. D. C.).[1]

The evidence as to the charitable character of the defendant was contained in oral testimony offered by each party and in two certified documents, offered by the defendant, bearing the seal of the Commonwealth, and signed by the Secretary of the Commonwealth. In so far as the testimony was oral, whether given by witnesses, other than herself, called by the plaintiff[2] or by the defendant, it could have been disregarded in whole or in part by the jury. *Phillips* v. *Eldridge,* 221 Mass. 103, 104. *Hall* v. *College of Physicians & Surgeons,* 254 Mass. 95, 99–100. *Cook* v. *Cole,* 273 Mass. 557, 559. *Canavan* v. *George,* 292 Mass. 245, 250. *Sluskonis* v. *Boston & Maine R.R.* 299 Mass. 413, 415–416. *United States Fid. & Guar. Co.* v. *English Constr. Co.* 303 Mass. 105, 110–111. *Lydon* v. *Boston Elev. Ry.* 309 Mass. 205, 206–207. *Duff* v. *Webster,* 315 Mass. 102, 103. Consequently, much testimony relied upon by the defendant must be disregarded by us also. We refer to such matters as exemption from taxation of all kinds; the receipt of gifts, donations, bequests, and income from trusts; inability to run the hospital upon amounts charged patients for services of all kinds; and the use of all funds,

---

[1] This case dealt with matters of pleading only and expressly reserved for the future the question of liability (page 362). The doctrine of charitable immunity was rejected in *President & Directors of Georgetown College* v. *Hughes,* 130 F. 2d 810 (Ct. App. D. C.).

[2] The plaintiff did not testify on the issue of charitable immunity.

from whatever source received, for the purposes for which the hospital was incorporated.

The authenticity or accuracy of the two documents has not been attacked by the plaintiff in the Superior Court or in this court, and, accordingly, they must be accepted as true. *Gahn* v. *Leary*, 318 Mass. 425, 426–427, and cases cited. *Grover* v. *Smead*, 295 Mass. 11, 13.

One document certified that on August 15, 1919, the name of the defendant was changed from "Charles D. Sias Research Laboratory and Appendix Hospital" to "Brooks Hospital, Inc." The other document was the articles of incorporation and showed that on July 12, 1915, pursuant to R. L. c. 125, § 6 (see now G. L. c. 180), a charter was issued to "Charles D. Sias Research Laboratory and Appendix Hospital" from which it appears that the corporation has no capital stock[1] nor any provision for the distribution of profits or dividends; and that the corporate purposes are: (a) Creating, establishing, and maintaining a hospital for providing medical and surgical treatment for the sick and injured and for promoting and advancing by original research and laboratory investigations or otherwise the science of medicine and surgery, and for exercising all powers usually incident to the maintenance and operation of a general hospital. (b) Acquiring by purchase, gift or otherwise any real and personal property which shall be devoted to the purposes set forth in the agreement of association and receiving and holding in trust or otherwise funds received by gift or bequest which shall be devoted by it to such purposes. (c) Doing all such things as may be incidental to the foregoing purposes.

The principal question for decision is whether, when a corporation is shown by public records to be charitable in its creation and in its powers as stated in its charter, there is incumbent upon that corporation the further obligation to go on and prove to the satisfaction of the tribunal of fact that it has not been operating ultra vires, or whether the powers enumerated in the charter are controlling where

---

[1] R. L. c. 125, § 3. See now G. L. c. 180, § 3 (as amended through St. 1947, c. 559, § 1).

evidence is lacking to the contrary. We are of opinion that the charter is prima facie evidence of charitable purpose and operation, and that unless there is introduced evidence warranting a finding to the contrary, the affirmative defence is established as matter of law. This conclusion was reached by a majority of courts elsewhere which had occasion to consider the question. *Southern Methodist Hosp. & Sanatorium* v. *Wilson*, 45 Ariz. 507, 524–525. *Wilcox* v. *Idaho Falls Latter Day Saints Hosp.* 59 Idaho, 350, 364. *Maretick* v. *South Chicago Community Hosp.* 297 Ill. App. 488, 493–494. *Nicholas* v. *Evangelical Deaconess Home & Hosp.* 281 Mo. 182, 191. *D'Amato* v. *Orange Memorial Hosp.* 101 N. J. L. 61, 63. *Sessions* v. *Thomas Dee Memorial Hosp. Assn.* 89 Utah, 222, 233–234.[1] 119 A. L. R. 1022. If *Hall* v. *College of Physicians & Surgeons*, 254 Mass. 95, undertakes to state a contrary rule, it cannot be reconciled with other decisions of this court. See *Zoulalian* v. *New England Sanatorium & Benevolent Assn.* 230 Mass. 102, 105; *Kidd* v. *Massachusetts Homœopathic Hosp.* 237 Mass. 500; *Glaser* v. *Congregation Kehillath Israel*, 263 Mass. 435, 436.

In the present case, the terms of the charter, if viewed alone, would require a finding that the defendant is a public charity. Its purposes, "promoting and advancing by original research and laboratory investigations or otherwise the science of medicine and surgery," are a charitable use. These activities are not confined to the laboratory.

In *Zoulalian* v. *New England Sanatorium & Benevolent Assn.* 230 Mass. 102, 105, it was said, "The defendant is a corporation organized 'for the purpose of founding a hospital . . . for the care and relief of indigent or other sick or infirm persons . . . and in no manner directly or indirectly for private profit or dividend paying, to any one.' It is plain that the objects of the corporation being benevolent and charitable, it must be held to be a valid public charity."

---

[1] Some of these jurisdictions have abandoned the doctrine of charitable immunity. *Ray* v. *Tucson Medical Center*, 72 Ariz. 22. *Wheat* v. *Idaho Falls Latter Day Saints Hosp.* 78 Idaho, 60. *Dalton* v. *St. Luke's Catholic Church*, 27 N. J. 22. *Collopy* v. *Newark Eye & Ear Infirmary*, 27 N. J. 29.

The defendant's charter does not contain any such word as "indigent." That is not necessary. "Charity in the legal sense 'is not confined to mere almsgiving or the relief of poverty and distress, but has a wider signification, which embraces the improvement and promotion of the happiness of man.' . . . *New England Sanitarium* v. *Stoneham*, 205 Mass. 335, 342." *Little* v. *Newburyport*, 210 Mass. 414, 417. The purpose cannot be carried out for private profit. *Assessors of Boston* v. *Garland Sch. of Home Making*, 296 Mass. 378, 387. A purpose qualifies as charitable if it "is for the benefit of 'the public at large or some part thereof, or an indefinite class of persons.' *Old South Society in Boston* v. *Crocker*, 119 Mass. 1, 23. *Sherman* v. *Shaw*, 243 Mass. 257, 259." *Assessors of Boston* v. *Garland Sch. of Home Making*, *supra*, 387. *Assessors of Dover* v. *Dominican Fathers Province of St. Joseph*, 334 Mass. 530, 539–540.

Two cases relied upon by the plaintiff do not support her contention that there is nothing in the defendant's charter to designate it as charitable or to compel it to exist for charitable purposes. In *Donnelly* v. *Boston Catholic Cemetery Assn.* 146 Mass. 163, there was a special act of incorporation of three named individuals, "their associates and successors" "for the purpose of establishing . . . a place for the burial of the dead." The court held (page 166) that "The beneficiaries are a definite number of persons clearly pointed out by law," so that the corporation did not fall within the description of a public charity given in *Old South Soc. in Boston* v. *Crocker*, 119 Mass. 1, 22–23. In *Stratton* v. *Physio-Medical College*, 149 Mass. 505, there was a lapse of a bequest to a definite private pecuniary enterprise.

"The requirement of the payment of reasonable fees by those who receive the benefits of an institution does not necessarily render it noncharitable. Such a requirement does not necessarily restrict the class of persons benefited so that it is not indefinite." *Assessors of Boston* v. *Garland Sch. of Home Making*, *supra*, 389, and cases cited. "The increase of charitable funds, through receipts from patients or inmates who are able to pay wholly or partially for bene-

fits received, does not change a home for aged people, or hospital, organized and conducted as a charity, into a private association, maintained for the pecuniary advantage of the promoters. The original eleemosynary character of the institution is not transformed by this patronage, even if sufficient to relieve it from financial burdens, but the charity as established remains unaffected." *New England Sanitarium* v. *Stoneham*, 205 Mass. 335, 342, and cases cited. "That a nonprofit institution charges fees for its services does not destroy the public character of its purpose." *Worcester* v. *New England Inst. & New England Sch. of Accounting, Inc.* 335 Mass. 486, 493. The absence of gifts is not fatal (*Assessors of Boston* v. *Garland Sch. of Home Making*, 296 Mass. 378, 390–391; *Worcester* v. *New England Inst. & New England Sch. of Accounting, Inc.*, supra, 493), although their presence tends to show that the institution is charitable. *McDonald* v. *Massachusetts Gen. Hosp.* 120 Mass. 432, 435.

It follows that it is immaterial in the circumstances that the defendant offered no evidence of the various matters specified by the plaintiff in her brief, namely, (1) that the defendant has been publicly recognized as a charitable institution or that the public in general contributes to it or looks upon it as charitable; (2) that the defendant makes public profession of its charitable nature by literature or otherwise; (3) that the surplus income or earnings must be retained in and for the sole benefit of the corporation; or (4) that there is a provision for the accounting of the defendant's funds.

The question remains whether, upon any oral testimony which the jury could accept, a finding would have been warranted that, notwithstanding its charter, the defendant was not maintained as a valid public charity in February, 1952, when the plaintiff was a patient. She relies upon certain testimony summarized in her brief. We state such testimony to the extent supported by the record. The chairman of the board of trustees is Dr. George W. Morse. He was the physician consulted by the plaintiff, and he maintains

an office at the hospital. Patients are billed for all services except services rendered by doctors. In order to be admitted, one must be a patient of a doctor associated with the hospital. The management tried to charge rates from patients that would enable the hospital "to keep out of the red." Doctor Morse, when testifying, could not give the name of any person who in 1949, 1950, or 1951 was admitted to the hospital with the understanding that he was not to be charged one penny for any services rendered to him. The hospital treasurer, a bank employee who visits the hospital for an hour once a month or less, testified that he would not know the name of any person who, in the years 1950, 1951, and 1952, was a charity patient and did not pay any money for services. During 1949 and 1950 the principal of a mortgage on the hospital building was reduced. The defendant received no money for its operational expenses from the Commonwealth or from the Federal government. When testifying, Dr. Morse did not have with him the names of any people who made gifts to the hospital between 1948 and 1951. Doctor George White, a witness called by the plaintiff, testified that he had taken over the entire work of radiology at the hospital. In 1951 and 1952 he received eighty per cent of the gross receipts of that work. Out of this he paid for the X-ray films and technicians. The hospital received the remaining twenty per cent. There are no free rooms or free beds, and no outpatient department is maintained. A pension was paid to a former female employee. In the calendar year 1951 there was a surplus of receipts over expenditures of $2,368.69. There was testimony by the treasurer, disputed by Dr. Morse, that on the third floor there were seven beds available for industrial accident cases of the Liberty Mutual Insurance Company; and that if one of these beds in use by a regular patient of the hospital was needed by an industrial accident patient of that company, the other patient probably would have to be moved.

This testimony would not have permitted a finding that the defendant was not a valid public charity. We do not

rest our decision to any extent upon the charitable work of the Sias laboratory, which, as shown by evidence as to records of the registry of probate of Suffolk County, was established by a substantial private bequest. We omit consideration of the laboratory, because testimony of the defendant's treasurer cast doubt upon the relationship of the laboratory to the hospital, although both are departments of the defendant.

Cases of tax exemption, where a corporation must prove that in actual operation it is a public charity, are not here pertinent. See, for example, *Jacob's Pillow Dance Festival, Inc.* v. *Assessors of Becket*, 320 Mass. 311, 313; *American Inst. for Economic Research* v. *Assessors of Great Barrington*, 324 Mass. 509, 512; *Fisher Sch.* v. *Assessors of Boston*, 325 Mass. 529, 533.

In accordance with the terms of the report, judgment must be entered for the defendant.

*So ordered.*