HAROLD BOXER *vs.* BOSTON SYMPHONY ORCHESTRA, INC.

Suffolk. February 3, 1959. — June 9, 1959.

Present: RONAN, SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Corporation,* Charitable corporation. *Charity. Evidence,* Prima facie evidence, Charity.

In an action of tort for personal injuries sustained on premises of the defendant, a corporation organized without shareholders under a predecessor of G. L. c. 180 to maintain a symphony orchestra, to give concerts, and to promote various aspects of music, the defendant's charter was prima facie evidence supporting the defence of charitable immunity asserted by the defendant, and it was error to strike the charter from evidence and to rule as matter of law that the defendant was not a charity entitled to such immunity.

TORT. Writ in the Superior Court dated July 13, 1956.

The action was tried before *Dowd,* J.

*Roger B. Coulter,* (*Philander S. Ratzkoff* with him,) for the defendant.

*Alfred A. Albert,* for the plaintiff.

RONAN, J. The plaintiff, a musical director of the Voice of America, a Federal agency, was injured on August 8, 1955, as he was preparing to install recording equipment in a theatre owned and maintained by the defendant at Tanglewood in the Berkshire Hills when he stepped over the edge of a stage upon a cloth covering the orchestra pit and fell into the pit. The first count alleged ordinary negligence; the second alleged reckless and wanton conduct; and the third was based upon a nuisance. The defendant set up a general denial and the affirmative defence of public charitable immunity from tort liability. The plaintiff had verdicts upon the first two counts. The third count was waived. The case is here upon the defendant's exceptions to the denial of its motions for directed verdicts, to the withdrawal of certain documents from evidence, to an instruction to the jury that the defendant was not a public charity entitled to tort immunity, to the failure to give certain requests, and to various rulings on evidence.

The plaintiff went to the jury on both counts of his declaration, and whether he was a business invitee or a mere licensee was properly left to the jury with sufficient instructions as to the duty owed in each case. The plaintiff was entitled to the most favorable view that the evidence would support. Kelly v. Railway Exp. Agency, Inc. 315 Mass. 301, 302. Barton v. New York, N. H. & H. R.R. 332 Mass. 345, 350. If both counts referred to the same cause of action there is nothing in the record to compel the plaintiff to elect between them or to require an instruction confining his right of recovery to a single count. Williams v. Pittsfield Lime & Stone Co. 258 Mass. 65, 70. Raymond Syndicate, Inc. v. American Radio & Research Corp. 263 Mass. 147, 156.

There was evidence that soon after the plaintiff got a press release announcing that two student operas were to be performed on August 8 and 9, 1955, it occurred to him that it might be worthwhile for the Voice of America to broadcast these performances behind the "Iron Curtain and Europe generally." He talked with one Bookspan, in charge of the

press office of the defendant, who agreed to permit the broadcasts, provided the plaintiff secured from the unions of which some of the students were members the clearances which the unions required whenever their members were not paid for a recording or broadcast, as here. The defendant also was not to be paid a fee. The clearances given by the unions were expressly limited to "cultural, noncommercial purposes."

There was also evidence at the trial that the Boston Symphony Orchestra was incorporated in 1918 under what is now G. L. c. 180 "to maintain a symphony orchestra and give concerts; to promote the enjoyment of music and the rendering of music through concerts, and establish and increase high standards in the rendering of orchestral music and in concerts; to promote musical education and greater public appreciation of music." The charter was received in evidence, but was later excluded (subject to the defendant's exception), as was an amendment of the by-laws passed in June, 1953, after our decision in *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston*, 294 Mass. 248. The amendment limited the charge for use by others of Symphony Hall to the actual expenses incurred. Both the charter and the amended by-laws are before us. The defendant has no shareholders, its supervision and control being in a self perpetuating board of trustees.

The activities of the defendant may be briefly summarized. During the winter season a series of concerts is given at Symphony Hall, after which a series known as the "Pops" concerts is produced. Admission is charged to the regular symphony and "Pops" concerts. For thirty years the orchestra has given concerts known as the Esplanade concerts, to which the public is admitted without charge. The orchestra also gives concerts out of town where it plays for a fee and a local sponsor takes care of the local arrangements. The orchestra has also made two European tours. It broadcasts over the National Broadcasting Company and receives royalties from the sale of recordings. It also has receipts from a New York radio station. It broadcasts

locally over an educational station sponsored jointly by a number of universities and the defendant. As one of the sponsors, the defendant has been contributing its share of the deficit of this station for the last six or seven years.

The defendant each summer from about July 1 until August 15 gives a series of eighteen concerts at Tanglewood. Tickets for these concerts are sold either by subscription or at the box office. During the same period concerts are given by students of the school of music. The school has no separate corporate existence, and is administered by the defendant. It has various departments, all leading to musical appreciation and development. Usually three or four opera performances are given by the students during the six week period, and the student orchestra gives a concert once a week. Only one half of the students pay tuition; the rest are provided scholarships by the defendant. The defendant maintains a cafeteria on the grounds where refreshments are sold and a bookstore from which a small profit is realized.

The defendant has always operated with an overall deficit. Persons known as "Friends" contribute to make up the deficits. They are in turn accorded a preference to attend the student performances without charge and if the theatre, which accommodates eleven hundred persons, is not filled, the public is admitted free of charge. The evidence showed that the defendant received for the 1954–1955 season some $137,000 from record royalties and broadcasting, and $62,595 as tuition from students at the school. The deficit from the operation of the school amounted to $46,491. It also appeared that the recording tapes made of student productions were made without charge and that there is no monetary benefit from the tapes to the defendant, for no records of student performances are sold commercially.

The trial judge, purporting to follow our decision in *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston*, 294 Mass. 248, ruled that as a matter of law the orchestra was not a charity, entitled to immunity from tort liability, and so instructed the jury. We are of the opinion that the

present case is not governed by the *Assessors* case. See Scott, Trusts (2d ed.) § 375.2. No question of tort liability was there presented or decided, and that case involved review of requests for rulings of law in a matter in which the Board of Tax Appeals had made findings of fact. The case dealt with the taxation of Symphony Hall in Boston, then used in a manner different from the use of Symphony Hall now prevailing, as the present record indicates. The decision in a tax exemption case is not the equivalent of a decision that a taxpayer is not a public charity, or, as was said in *Barrett* v. *Brooks Hosp. Inc.* 338 Mass. 754, 762, cases of tax exemption "are not here pertinent."

The charter and the amendment of the by-laws of June, 1953, should not have been struck from evidence. The charter was prima facie evidence of the charitable character and purpose of the defendant. *Barrett* v. *Brooks Hosp. Inc.*, supra.

*Exceptions sustained.*