HAROLD BOXER *vs.* BOSTON SYMPHONY ORCHESTRA, INC.

Suffolk.    March 6, 1961. — May 3, 1961.

Present: WILLIAMS, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Corporation,* Charitable corporation. *Charity. Evidence,* Prima facie evidence.

A corporate charter which sets forth charitable purposes as the purposes for which the corporation was created is prima facie evidence of its charitable purposes and operation in an action of tort against it and, in the absence of evidence to the contrary, establishes the defence of charitable immunity as a matter of law.    [538]

In an action of tort for personal injuries sustained in a fall from the stage of a musical center of the defendant by the plaintiff while arranging the broadcasting and recording of musical concerts for the Voice of America, a finding that the defendant, a corporation organized without shareholders under a predecessor of G. L. c. 180 and having a charter authorizing it to maintain a symphony orchestra, to give concerts, and to promote musical enjoyment, education, standards and appreciation, was not maintained as a valid public charity at the time of the accident or that such broadcasting and recording were not charitable in character was not warranted by the evidence at the trial, which disclosed the wide scope of the defendant's musical and educational activities and incidental services, a substantial number of which were free, even though the defendant occasionally broadcast for a commercial sponsor and made recordings for royalties and its unpaid participation in the Voice of America program might increase the defendant's prestige and sales.    [538-541]

TORT.   Writ in the Superior Court dated July 13, 1956.
The action was tried before *Morton,* J.

*Alfred A. Albert,* for the plaintiff.

*Roger B. Coulter,* (*Philander S. Ratzkoff* with him,) for
the defendant.

WHITTEMORE, J.   The decision in *Boxer* v. *Boston Sym-
phony Orchestra, Inc.* 339 Mass. 369, 373, following the first
trial of this case, sustained the defendant's exceptions to
the exclusion of the defendant's charter and an amendment
of the by-laws.   At the second trial the defendant had ver-
dicts on the two counts not waived: the first for negligence,
and the second for reckless, wilful or wanton misconduct.
These are the plaintiff's exceptions to the failure of the
judge to give certain instructions, and to the charge, and
the defendant's exceptions to the denial of its motion for a
directed verdict on each count and to the exclusion of cer-
tain documents.   The circumstances of the plaintiff's in-
jury on August 8, 1955, are set out in the earlier opinion.

The motion for directed verdicts should have been al-
lowed.   "The charter was prima facie evidence of the
charitable character and purpose of the defendant."   *Ibid.,*
339 Mass. 369, 373.   *Barrett* v. *Brooks Hosp. Inc.* 338 Mass.
754, 758–760.   There was no testimony which would have
warranted a finding that the defendant was not maintained
as a valid public charity at the time of the accident or that
the particular activity in which it was then engaged was
not charitable in character.

There was no evidence to show that in any aspect the de-
fendant in 1955 was acting beyond the scope of its charter
which authorizes it to undertake "the further carrying on
of a symphony orchestra such as has been carried on dur-
ing the past thirty-seven years by Henry L. Higginson
under the name of the Boston Symphony Orchestra; to
maintain a symphony orchestra and give concerts; to pro-
mote the enjoyment of music and the rendering of music
through concerts, and establish and increase high standards
in the rendering of orchestral music and in concerts; to
promote musical education and greater public appreciation

of music.'' Symphony concerts, ''pops'' concerts, Esplanade concerts, concerts on tour, broadcast concerts, the making of records, the summer musical program at Tanglewood in the Berkshires including symphony concerts and the Summer School of Music, or Berkshire Music Center, are all within the broad general purposes of the charter. The sale of refreshments and the maintenance of a book store at Tanglewood are incidental and insignificant in determining the substance of what the defendant does. See *Conklin* v. *John Howard Industrial Home,* 224 Mass. 222; *Reavey* v. *Guild of St. Agnes,* 284 Mass. 300.

These musical activities were also all appropriate activities of a public charity. They show privately managed funds, privately directed enterprise, being devoted to a public purpose. See statutes and cases collected in *Worcester* v. *New England Inst. & New England Sch. of Accounting, Inc.* 335 Mass. 486, 489. Whatever the earlier status of music in the United States, at the present time the promotion of the enjoyment of music, the establishment and the increase of high standards in the rendering of music, and the promotion of musical education and public appreciation of music are of public concern. ''A trust for the promotion of purposes which are of a character sufficiently beneficial to the community to justify permitting property to be devoted forever to their accomplishment is charitable.'' Restatement 2d: Trusts, § 374. ''Some of these trusts [for community purposes] can be supported on the ground that they tend to promote the health of the community . . . or involve a form of education . . . but it is sufficient that they promote the general happiness of the community.'' *Ibid.,* § 374, comment f. See *Briggs* v. *Merchants Natl. Bank,* 323 Mass. 261; *Hoenig* v. *Lubetkin,* 137 Conn. 516; *In re Everson's Will,* 268 App. Div. (N. Y.) 425, 434, affd. 295 N. Y. 622; *Matter of Futterman,* 197 Misc. (N. Y.) 558; *Rhode Island Hosp. Trust Co.* v. *Benedict,* 41 R. I. 143; Scott, Trusts (2d ed.) § 370.

The evidence shows a substantial amount of free service unrestrictedly offered, including the broadcasting of regu-

lar and other concerts, the Esplanade concerts, support of the educational broadcasting activities of the Lowell Institute, and many of the activities at Tanglewood. The doubts expressed in *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston,* 294 Mass. 252, 255–256, would be inapplicable to musical activity of this scope. In any event, the well established principle is applicable that the payment of fixed charges by patrons does not deprive a public trust of its charitable status (*Barrett* v. *Brooks Hosp. Inc.* 338 Mass. 754, 759–760, and cases cited) nor show that its service is offered otherwise than to an "indefinite class of persons" from among the general public. See *Assessors of Boston* v. *Garland Sch. of Home Making,* 296 Mass. 378, 388–390; *Worcester* v. *New England Inst. & New England Sch. of Accounting, Inc.* 335 Mass. 486, 490, and cases cited in each case; Scott, Trusts (2d ed.) § 375.2.

It is unimportant for this case whether certain things done by the defendant, such as occasional broadcasting with a commercial sponsor or the making of records with resulting substantial royalties, may be outside the charitable exemption. See *Holder* v. *Massachusetts Horticultural Soc.* 211 Mass. 370; *McKay* v. *Morgan Memorial Coöp. Indus. & Stores, Inc.* 272 Mass. 121; *Reavey* v. *Guild of St. Agnes,* 284 Mass. 300. On the evidence the activities of the Berkshire Music Center in the course of which the plaintiff was injured are primarily educational and unquestionably within that exemption. See *Dexter* v. *Harvard College,* 176 Mass. 192, 194–195. Three or four hundred students are enrolled each summer in a number of departments which teach the various instruments and opera; the teachers are mostly members of the Boston Symphony Orchestra. This is a school of musical performance; its "purpose . . . [is] to extend the whole purpose of the orchestra . . . the cultivation of musical art and further to teach what we know to young people." Fifty per cent of the students pay half tuition; the others pay nothing. The defendant's scholarship fund helps pay the expenses. Beyond this there is a deficit. Performances are part of the student training. It is important to have an audience

for student performances. Friends who contribute are given reserved seats. The back of the building is open, weather permitting, and the general public attends without charge so far as space permits.

We see nothing in the suggestion that advantage to the defendant in increased sales of records, demand for concerts away from Massachusetts, or general prestige, which might conceivably result from the broadcast to other countries of a student opera program on the Voice of America channels, could be deemed to make the activity commercial and outside the charitable purpose. The defendant received no income from or payment because of the broadcast by the Voice of America or from any recording or tapes of the student orchestra or operas.

The most that could be concluded from the defendant's willingness to coöperate with the Voice of America was that it was doing so in recognition of its public function. The evidence showed that the plaintiff was musical director for the Voice of America. He wished to broadcast these student programs of high cultural content in order to combat communist propaganda that the United States is not interested in cultural things. He intended also to record interviews with members of the Boston Symphony Orchestra and two concerts in Tanglewood by professional musicians. He asked permission to come and arrange the broadcasting and recording, and the defendant agreed, subject to clearances from two unions involved, so that the operas could be recorded and broadcast for "cultural, noncommercial purposes."

The evidence referred to in the foregoing paragraph tends to show that the plaintiff was on the defendant's stage for the purposes of the public enterprise for which he worked and not for any benefit to the defendant, and hence that he was only a licensee. Compare 339 Mass. 369, 370. In the circumstances we need not decide that issue.

As verdicts should have been directed for the defendant on its motion we need not consider the plaintiff's exceptions. See *Ferrara* v. *Boston & Maine R.R.* 338 Mass. 323, 330.

Our recent cases are a sufficient answer to the plaintiff's earnest contention that the immunity of the public charity should be abolished. *Barrett* v. *Brooks Hosp. Inc.* 338 Mass. 754, 755–756. *Simpson* v. *Truesdale Hosp. Inc.* 338 Mass. 787 ("While as an original proposition the doctrine might not commend itself to us today, it has been firmly imbedded in our law for over three quarters of a century and we think that its 'termination should be at legislative, rather than at judicial, hands' ").

*Defendant's exceptions sustained.*
*Plaintiff's exceptions dismissed.*
*Judgments for the defendant on the verdicts.*