BERNICE PROCTOR *vs.* NORTH SHORE COMMUNITY ARTS
FOUNDATION & others.[1]

No. 96-P-252.

Suffolk. February 16, 1999. - July 22, 1999.

Present: ARMSTRONG, BROWN, & SPINA, JJ.

*Practice, Civil,* New trial, Additur, Special questions to jury, Amendment,
Parties, Judgment notwithstanding verdict. *Corporation,* Non-profit
corporation. *Negligence,* Comparative.

In a civil action, the plaintiff was entitled to a hearing on her motions for a
new trial, and the matter was remanded for such a hearing. [375-376]
In a civil action, the judge did not abuse her discretion in denying the
plaintiff's motion for additur. [376-377]
In a civil action, the judge correctly allowed a defendant's motion for sum-
mary judgment on the issue whether the defendant's liability was capped
by the provisions of G. L. c. 231, § 85K. [377]
In a civil action, the defendant was not entitled to a judgment notwithstanding
the verdict on the basis that the jury rendered an inconsistent verdict that,
upon the judge's resubmission with instructions, the jury reconciled.
[377-378]
In a civil action, the plaintiff should have been allowed to amend her complaint
to add a defendant, an alleged agent of another defendant, whose existence
had not been disclosed during discovery. [378-379]
The judge in a negligence action did not err in denying the plaintiff's motion
for judgment notwithstanding the verdict, in circumstances in which the
jury had properly concluded that the plaintiff's comparative negligence
was fifty percent. [379]

CIVIL ACTION commenced in the South Boston Division of the
District Court Department on July 23, 1990.

After removal to the Superior Court Department, a motion
for summary judgment was heard by *John C. Cratsley*, J.; the
case was tried before *Patti B. Saris*, J., and motions for a new

---

[1]Gold Star Wholesale Nursery, Inc., Apex Products, Inc., and EMU, Inc.
The complaint was dismissed without prejudice against EMU, Inc.

trial were heard by her; and a motion to vacate summary judgment was heard by *Cratsley,* J.

*Michael J. Traft* (*Richard M. Lane* with him) for the plaintiff.

*Joseph P. Musacchio* for North Shore Community Arts Foundation.

*Carol A. Griffin* for Gold Star Wholesale Nursery, Inc.

*Richard W. Jensen* for Apex Products, Inc.

BROWN, J. This appeal amply demonstrates the old maxim — "Whatever can go wrong, will go wrong." The question for this court thus becomes what ought to be done after excising the errors, which traverse a wide range of the civil procedure spectrum.

Bernice Proctor brought this action against the North Shore Community Arts Foundation (North Shore), Apex Products, Inc. (Apex), and Gold Star Wholesale Nursery, Inc. (Gold Star), and EMU, Inc., for personal injuries she suffered in July, 1987, prior to a concert at the North Shore Music Theatre while seated at a table with an umbrella when a sudden gust of wind caught the umbrella and overturned the table. The theater was owned and operated by North Shore which was chartered by the Commonwealth as a charitable, nonprofit organization pursuant to G. L. c. 231, § 85K. North Shore also had on site a restaurant operated by a separate entity (which held a liquor license).

The plaintiff had come to the premises to attend a concert and to eat dinner at the restaurant. After eating dinner, the plaintiff moved to an open air picnic or courtyard area on the theater grounds to await the concert. The table, chairs, and umbrellas had been set up in this picnic area. North Shore provided this area to its patrons to sit and enjoy refreshments while waiting for a concert to begin. North Shore leased or contracted the outside picnic area to profit-making companies: North Shore Theatre Concessions, Inc. (Concessions), a wholly-owned subsidiary of North Shore, and Hospitality Consultants, separate entities that sold food and beverages to interested patrons who were on the premises for the purpose of attending North Shore concerts. On the date of the incident, Hospitality Consultants was selling alcoholic beverages in the picnic area where the accident occurred.

On the evening when the plaintiff was injured, the weather was fair initially. After Proctor had been sitting for a little over five minutes, the weather became cloudy and suddenly very

gusty. The plaintiff and her companion considered whether they should go inside, but decided to remain outdoors.

The plaintiff sought damages for negligence against all the defendants. Proctor claimed that North Shore was negligent in the placement and maintenance of the umbrella and for failing to warn and remove patrons from the area when the wind increased. She also sought damages for breach of express and implied warranties against Apex and Gold Star.[2]

In a special jury verdict, the jury found that Gold Star had not sold the umbrella which injured Proctor to North Shore, was not negligent, and had not committed a breach of any warranty. Similarly, the jury found that Apex had not sold the umbrella which injured Proctor to Gold Star, nor was it negligent, or in breach of any warranty.[3]

The jury found that North Shore was negligent, that $150,000 would compensate Proctor for her injuries, and that its negligence proximately caused Proctor's injuries. In addition, the jury determined that Proctor was comparatively negligent, thus reducing her award by fifty percent which was further reduced by the cap on charitable immunity to $20,000, pursuant to G. L. c. 231, § 85K.[4]

The jury's verdict as first rendered contained a glaring inconsistency: they found North Shore negligent but answered "no" to the question whether such negligence had caused injury to the plaintiff and then proceeded to determine damages in answer to the special question presented to them. The trial judge determined that the jury's failure to find proximate cause was not consistent with the jury's assessment of $150,000 in

---

[2]Gold Star was the alleged seller of the table and umbrella to North Shore, and Apex was the alleged manufacturer of the umbrella.

[3]The special questions required the jury to determine whether Gold Star and Apex were negligent or had breached a warranty even if the jury found that those entities had not supplied or sold the umbrella.

[4]General Laws c. 231, § 85K, as amended by St. 1987, c. 238, provides in relevant part: "It shall not constitute a defense to any cause of action based on tort brought against a corporation . . . that said corporation . . . is or at the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation . . . liability in any such cause of action shall not exceed the sum of twenty thousand dollars exclusive of interest and costs . . . . [T]he liability of charitable corporations . . . shall not be subject to the limitations set forth in this section if the tort was committed in the course of activities primarily commercial in character even though carried on to obtain revenue to be used for charitable purposes."

damages. The judge instructed the jury that they should either find that North Shore's negligence was the proximate cause of Proctor's injuries or should rescind their assessment of damages. The jury changed their initial verdict and found that North Shore's negligence was the proximate cause of the plaintiff's injury.

Proctor filed several posttrial motions.[5] The judge denied Proctor's motions for new trials against Gold Star and Apex. Proctor and North Shore filed cross appeals from the judgment and from the denial of their posttrial motions. After a hearing, a different Superior Court judge denied Proctor's motion to vacate summary judgment.

The major thrust of Proctor's claims on appeal are that North Shore (1) evaded discovery of the existence of Concessions, the profit-making corporation licensed to serve liquor at the picnic area where she was injured, (2) engaged in a pattern of deliberate fraud and deception during the discovery process to prevent her from establishing the connection between the codefendants, Apex and Gold Star, the manufacturer and seller of the umbrella that injured her, and North Shore, and (3) mischaracterized the picnic area as an area open for all patrons to enjoy in an attempt to maintain the charitable cap on damages afforded to nonprofit corporations under G. L. c. 231, § 85K, instead of properly characterizing the picnic area as an area used to support commercial, noncharitable activity.

1. *Denial of Proctor's motion for a new trial against Gold Star and Apex.* Proctor's motions for a new trial against Apex and Gold Star were denied.[6] Proctor contends that a new trial should have been granted because she was hindered in presenting her case due to those two codefendants' abuse of the

---

[5]Proctor filed motions for a new trial against Apex and Gold Star, and motions for a new trial regarding damages, for judgment notwithstanding the verdict, or in the alternative, for a new trial on the comparative negligence claim, and to vacate the summary judgment on charitable immunity against North Shore. North Shore also moved for a judgment notwithstanding the verdict. The trial judge denied all of the motions without a hearing, except she referred the charitable immunity motion to the motion judge.

[6]The order in favor of Apex reads, "4/28/93 Denied. The court structured the jury verdict form in order to require the jury to determine whether there was negligence even assuming the umbrella originated with Apex. The jury said no. Further, even drawing all inferences in favor of plaintiff, there was no evidence of negligence or breach of warranty." The judge issued a similar order in favor of Gold Star.

discovery process.[7] On review of a denial of a motion for a new trial, we apply familiar principles. See, e.g., *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 520, cert. denied, 493 U.S. 894 (1989). See also *Hartmann* v. *Boston Herald-Traveler Corp.*, 323 Mass. 56, 60 (1948). "The judge should set aside the verdict 'only if he is satisfied that the jury have failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law.' " *Bolton* v. *Massachusetts Bay Transp. Authy.*, 32 Mass. App. Ct. 654, 658 (1992) (citation omitted).

Former Superior Court "rule 26, adopted in 1974, reads . . . as follows: 'A motion for a new trial shall specify the grounds thereof. Unless within ten days after the filing of a motion for a new trial application is made to the presiding justice for a hearing, he may act thereon without a hearing.' " *F.W. Webb Co.* v. *Averett*, 422 Mass. 625, 627 (1996).[8] Pursuant to rule 26, Proctor was entitled to a hearing on the motions for a new trial since her request for a hearing was made timely and did "specify grounds thereof." The arguments of the two defendants to the contrary are not persuasive. Even if we were to accept their argument that the strictures of the *F. W. Webb Co.* case are inapplicable in the absence of a showing of harm, we are confident in these particular circumstances that the presentation of the plaintiff's case was adversely affected or at least made more difficult.

2. *Additur.* A trial judge is "to use the additur process only when he concludes that the verdict is sound except for inadequacy of the amount and the inadequacy is such as to descend to the level of unreasonableness. An unduly slim verdict, however, may signal the existence of other defects in the work of the jury, or mistakes by the judge. In such a case additur would not be appropriate, and a simple new trial would be called for. All this is for consideration in the first place by the trial judge." *Freeman* v. *Wood*, 379 Mass. 777, 785-786 (1980). See Mass.R.Civ.P. 59(a), 365 Mass. 827 (1974). In

---

[7]Proctor moved for a new trial on the ground that the nondisclosure of notes and photographs until late in the trial hindered her ability to identify the manufacturer and seller of the umbrella and thereby prejudiced her ability to present her case.

[8]"[T]here is a presumptive right to a hearing on certain enumerated motions when a hearing is requested in timely fashion." *F.W. Webb Co.* v. *Averett*, 422 Mass. at 627 n.4. Rule 26 was amended in 1997 so as to eliminate the hearing requirement except as provided in Mass.R.Civ.P. 59(d), 365 Mass. 827 (1974).

the case at bar, we discern no abuse of discretion in the trial judge's denial of the plaintiff's motion for additur.

3. *North Shore's summary judgment motion.* The allowance of North Shore's motion for summary judgment was appropriate. The plaintiff's argument in opposition to North Shore's motion was off the mark, as she merely relied on the existence of the restaurant and North Shore's leasing of space for Concessions. In that context, on our examination of the record, we reach the same conclusion, as did the Superior Court judge, that "the maintenance of a picnic area, at no additional cost to patrons, and the sale of refreshments by another entity at the picnic area were incidental to North Shore's primary activities . . . [and further that] [t]he picnic area was not formed with the intent to raise revenue for the theater." See *Missett* v. *Cardinal Cushing High Sch.*, 43 Mass. App. Ct. 5, 11 (1997).[9] See also *Boxer* v. *Boston Symphony Orchestra, Inc.*, 342 Mass. 537 (1961); *Mason* v. *Southern New England Conference Assn.*, 696 F.2d 135, 138-140 (1st Cir. 1982) (charitable immunity prevented recovery for the "reckless, wilful or wanton misconduct" of an employee of a charity).

4. *North Shore's cross appeal.* In its cross appeal, North Shore argues, based upon *Footit* v. *Monsees*, 26 Mass. App. Ct. 173 (1988), that it was entitled to judgment entered in its favor.[10] Here, in response to a special question, the jury, contrary to the judge's instructions, awarded damages despite finding, in answer to a prior special question, that North Shore did not proximately cause the plaintiff's injuries. We think that the judge appropriately could explain to the jury that two of their answers were inconsistent and that they should reconsider those answers in such manner as to rectify the apparent confusion. Nothing in *Footit* is to the contrary.[11] In the circumstances, the judge did

---

[9] In *Missett* we distinguished *Phipps* v. *Aptucxet Post # 5988 V.F.W. Bldg. Assn.*, 7 Mass. App. Ct. 928, 930 (1979), opining that there "a jury could have found that regular Saturday night dances generating eighty-five to ninety percent of the defendant's income, which was being used primarily to pay mortgage and overhead expenses, was a primarily commercial activity, and not directly related to the charity's purpose." *Missett, supra* at 11 n.11.

[10] The *Footit* court in dicta stated that "[w]here an answer to one special question is dispositive of the case and renders immaterial the answer to another special question, the dispositive answer is controlling and judgment should be entered on that answer." *Id.* at 181.

[11] In *Footit, supra* at 180-181, proximate cause became a nonissue in light

not err in denying North Shore's motion for judgment notwithstanding the verdict.

*5. Proctor's request to add a party defendant.* "Massachusetts has long had a liberal policy allowing amendments which add or substitute parties after the statute of limitations has expired." *Bengar* v. *Clark Equip. Co.*, 401 Mass. 554, 556 (1988).[12] "Our cases have not . . . permitted an amendment to relate back to the date of the commencement of the action when . . . the amendment seeks to add a new defendant after the statute of limitations has run and to allege against that new defendant a theory of liability wholly different from the theory of liability of the original complaint." *Id.* at 556-557. "We look to see whether an amendment would enable a plaintiff to maintain the action which he originally intended to bring." *Id.* at 557.

Here, Proctor submitted an emergency motion to the judge on the eve of the trial to amend the complaint and add as a defendant its wholly-owned for-profit subsidiary Concessions, which held both a common victualer license and a liquor license. It is clear that Proctor intended to bring an action against the parties liable for her injuries. Proctor objected to North Shore being allowed to raise the issue of charitable immunity after evading discovery of the existence of Concessions. In these circumstances, it was error for the judge to deny Proctor's motion to add Concessions as a defendant.

North Shore claims that Proctor does not appear to argue that Concessions was an "agent" of North Shore for the purpose of rendering North Shore vicariously liable for Concessions's alleged negligence. It claims that even if Concessions, as an agent of North Shore, committed a negligent act in the placement and maintenance of the umbrella that this would not deprive North Shore, as the principal, of the protection of the charitable cap on damages as long as the acts of the alleged agent (Concessions) were consistent with North Shore's charitable purpose.

The general rule is that an agent is not entitled to the protection of his principal's immunity even if the agent is acting on behalf of his principal. Restatement (Second) of Agency § 347(1) (1958). "In 1971, the Legislature abolished entirely the defense of charitable immunity from tort liability 'if the tort was committed in the course of activities primarily commercial

---

of the jury's finding that all the defendant physicians were not negligent.

[12]We note in passing that the *Bengar* case is conspicuously absent from citation in the briefs.

in character even though carried on to obtain revenue to be used for charitable purposes.' G. L. c. 231, § 85K, inserted by St. 1971, c. 785, § 1." *Mullins* v. *Pine Manor College*, 389 Mass. 47, 63 (1983).

It is conceivable that Proctor would have a claim against Concessions for liability for her injuries if she had been allowed to add Concessions as a defendant. We vacate the judge's order denying Proctor's motion to add Concessions as a defendant.

6. *Comparative negligence.* "When considering a judge's denial of a motion for judgment notwithstanding the verdict, this court's task is to determine 'whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the [nonmoving party]." ' . . . 'We do not weigh the evidence or consider the credibility of the witnesses.' . . . 'Evidence that contradicts the testimony of the nonmoving party is to be ignored.' " *Moose* v. *Massachusetts Inst. of Technology*, 43 Mass. App. Ct. 420, 421 (1997) (citations omitted).

In the instant case, viewing the evidence in the light most favorable to the defendant, who had the burden of proving the plaintiff's comparative negligence at trial, G. L. c. 231, § 85, the jury properly could have found that Proctor was fifty percent responsible. Compare *Hanover Ins. Co.* v. *Sutton*, 46 Mass. App. Ct. 153, 166 (1999). Proctor was in the same position as North Shore to assess the worsening weather conditions. Moreover, Proctor actually discussed the change in the weather with her companion, and they decided to remain under the umbrella rather than to go indoors. The judge did not err in denying Proctor's motion for judgment notwithstanding the verdict.

7. *Conclusion.* Proctor is entitled to a hearing to reconsider her motions for a new trial against Apex and Gold Star. North Shore's motion for summary judgment was properly allowed. We vacate the denial of Proctor's motion to add Concessions as a defendant. We affirm the judge's order denying Proctor's judgment notwithstanding the verdict and the judge's order denying North Shore's similar motion. This matter is accordingly remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*