LAURENCE T. GOLDBERG & another[1] vs. NORTHEASTERN UNIVERSITY.

No. 02-P-699.

Suffolk. October 14, 2003. - March 25, 2004.

Present: GREENBERG, DREBEN, & COWIN, JJ.

*Negligence,* College, Expert opinion. *Health Care Facility. Evidence,* Expert opinion. *Damages,* Tort. *Charity. Practice, Civil,* Damages.

In a civil action against a university health center for negligent medical treatment, the evidence did not support a finding that the university's operation of the health center was negligent, in the absence of expert testimony that was probative of the question whether the university set up, staffed, and operated the health center in a negligent manner. [709-711]

The defendant in a civil action alleging negligent medical treatment was entitled to the protection of the statutory cap on damage awards arising out of charitable activities, where the defendant established a prima facie case that it was a charitable organization through the submission of its certificate of incorporation and articles of organization, and the plaintiffs presented no countervailing evidence. [711-713]

CIVIL ACTION commenced in the Superior Court Department on February 27, 1996.

The case was tried before *Maria I. Lopez,* J., and motions for reconsideration of the amendment of the damages award and for judgment notwithstanding the verdict or for a new trial were heard by her.

*Michael T. Eskey,* of Rhode Island, for the plaintiffs.

*Edward F. Mahoney* for the defendant.

COWIN, J. Following the death of their daughter Michel, a student at Northeastern University (Northeastern), the plaintiffs commenced this action in the Superior Court against Northeastern, two physicians, and two nurses, alleging that negligent

---

[1]Marlene Goldberg, individually and as administrator of the estate of Michel Goldberg.

medical treatment at Northeastern's health care facility, the Lane Health Center, led to Michel's death. By agreement, the claims against the nurses were dismissed, and the case proceeded to trial against Northeastern and the physicians. Following a nine-day trial, the jury concluded that the physicians had not been negligent, but found that Northeastern negligently set up and operated the Lane Health Center, and that this negligence was a substantial factor in causing Michel's death. The jury returned a verdict of $2 million in damages for each plaintiff.

The judge, finding that Northeastern was a charitable organization for purposes of the statute capping tort awards against such entities, G. L. c. 231, § 85K, limited the damages award to $20,000. The plaintiffs filed a motion for reconsideration of the application of the statutory cap, and Northeastern filed a motion for judgment notwithstanding the verdict or new trial, both of which the judge denied. The plaintiffs appeal, arguing that because Northeastern did not present any evidence of its status as a charitable organization, it was not entitled to relief under G. L. c. 231, § 85K. Northeastern also appeals, asserting that there was insufficient evidence of negligence on its part, and accordingly, it was error to deny Northeastern's motion for judgment notwithstanding the verdict. We agree with Northeastern that the evidence did not support a finding that its operation of the Lane Health Center was negligent, and consequently it was entitled to judgment. We therefore reverse. While this eliminates application of the charitable cap as a factor affecting the judgment, we believe that it is useful to comment on that issue as well.

1. *Material facts.* The jury could permissibly have found the following. On February 13, 1993, Michel Goldberg, a freshman at Northeastern, visited the Lane Health Center, the health care facility for members of the Northeastern community. Michel complained of a dry cough, nausea, dizziness, upper abdominal discomfort, lower back pain, and general malaise. Because February 13, 1993, was a Saturday, the Lane Health Center, in accordance with its standard protocol, was staffed only by a registered nurse, who was directed to make an initial assessment of all patients and consult an off-site, on-call physician if

the nurse determined that it was necessary that a patient see a doctor. Without consulting a physician, the registered nurse on duty that day determined that Michel had influenza, and recommended that she drink fluids, follow a bland diet, rest, and take Tylenol. After offering Michel a bed in the infirmary, which Michel declined, the nurse released Michel to her dormitory room and advised her to follow up with the Lane Health Center if her symptoms persisted or worsened.

Michel then traveled to her parents' home in New Jersey. On February 28, 1993, she was brought to Englewood Hospital in New Jersey, where she died of acute anemia triggered by acute myelogenous leukemia.

2. *The negligence claim.* Judgment notwithstanding the verdict is proper when the evidence, construed in a light most favorable to the nonmoving party, nonetheless justifies a verdict for the moving party. *D'Annolfo* v. *Stoneham Hous. Authy.*, 375 Mass. 650, 657 (1978). The standard of review is whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the [nonmoving party]." *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978), quoting from *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). If so, the verdict must be sustained. In this case, if the evidence permits reasonable inferences that Northeastern was negligent in its setup and operation of the Lane Health Center, and that this negligence proximately caused the death of Michel Goldberg, then the evidence is sufficient and the verdict must stand.

We conclude that a finding of negligence on Northeastern's part in this case required expert testimony.[2] Such testimony is a prerequisite to recovery in cases involving medical practice "where the precautions taken (or omitted) were in fact the result of a deliberated judgment in the particular case on the part of a physician or skilled staff." *Bennett* v. *Winthrop Community Hosp.*, 21 Mass. App. Ct. 979, 981 (1986). The question,

---

[2]We conclude that the issue was properly preserved by means of Northeastern's motions for directed verdict and judgment notwithstanding the verdict which asserted that there was insufficient evidence of negligence in the setting up or operation of the Lane Health Center.

apparently not previously addressed in Massachusetts appellate decisions, is whether that principle applies to the decisions inherent in the creation, staffing, and operation of a medical facility such as the Lane Health Center. Here, the plaintiffs claim that Northeastern "negligently staffed the Lane Health Center on weekends with inexperienced and untrained personnel who were allowed, and even expected, to practice beyond the scope of their professional license." In so claiming, the plaintiffs note that the Lane Health Center's director, an individual with extensive experience in the administration and management of health care facilities, and who "had authority to implement procedures and protocols governing the set-up and operation of the health center," knew that registered nurses were not licensed to make medical diagnoses, and yet staffed the Lane Health Center only with registered nurses on the weekends. We believe that the subject of establishing, staffing, and operating a health care center, including determinations regarding adequate staff configurations on weekends, involves quintessentially medical judgments that are not matters with which a lay jury is likely to be acquainted. Thus, the plaintiffs' allegation that Northeastern negligently staffed and operated the Lane Health Center is merely speculative unless buttressed by the testimony of one or more witnesses who are able to demonstrate that they are skilled in such affairs.

Such expert evidence was lacking. Instead, the plaintiffs presented expert evidence that the registered nurse who treated their daughter deviated from the standard of care for registered nurses by diagnosing and formulating a treatment plan for the patient without seeking the assistance of a doctor, and that the doctor who reviewed this diagnosis and treatment plan violated the standard of care for doctors in his position by "signing off" on those judgments. While that evidence may have been sufficient to present claims against the nurse or the doctor to the jury, the plaintiffs failed to offer evidence that was probative with respect to the entirely independent question whether Northeastern set up and operated the Lane Health Center in a negligent manner. Indeed, the only testimony on this issue came from a doctor who stated that the setup of the Lane Health Center, particularly the weekend system whereby a registered

nurse staffed the infirmary and made an initial assessment of each patient, was consistent with the procedures ordinarily employed in university health systems at that time. This being the only evidence on the subject, the jury could not permissibly find that Northeastern did not exercise the level of care required in the circumstances. Even had there been findings that the physicians or the nurses had individually been negligent, which there were not, such findings would not by themselves have translated into a finding that Northeastern was negligent in its establishment and operation of the system in which such physicians and nurses operated.[3]

3. *The charitable cap.* The plaintiffs' recovery, even if sustained, would be limited to $20,000 by virtue of the application of the statutory cap on damage awards arising out of charitable activities. Under G. L. c. 231, § 85K, as inserted by St. 1971, c. 785, § 1, if a charitable organization commits a tort "in the course of any activity carried on to accomplish directly the charitable purposes of such [organization]," that organization shall not be liable in a cause of action based on that tort for an amount in excess of $20,000 exclusive of interest and costs. The burden is on the organization to prove that it is charitable and that the tort was committed during an activity in direct furtherance of the organization's charitable purposes. See *Harlow* v. *Chin*, 405 Mass. 697, 715 (1989).

The plaintiffs contend that Northeastern did not meet its burden of proving that it is a charitable organization for purposes of G. L. c. 231, § 85K, because Northeastern submitted no evidence on the subject. The record does not support the plaintiffs' proposition. During the first day of the trial, Northeastern's counsel raised the issue of Northeastern's status as a charitable organization, observing that Northeastern has long been "charitable," and stating that he had Northeastern's certificate of incorporation and articles of organization "to submit as part of my case." In response to the attorney's request for guidance on the handling of the question of Northeastern's

[3]Given our conclusion that the evidence was insufficient to support a finding of negligence on the part of Northeastern, we do not address Northeastern's contention that its negligence, if any, was not shown to have been a cause of Michel Goldberg's death.

charitable status, the judge explicitly bifurcated the issue from the rest of the case, indicating that, after the case went to the jury as "a straight negligence case," she would decide Northeastern's charitable status separately.

On the last day of the trial, Northeastern's counsel requested permission to submit certain documents "as judicial exhibits so that they do not go to the jury." He asked the judge how those exhibits should be marked, to which the judge replied "[m]ark them for identification only, and they'll be for me only." The exhibits included the defendant's certificate of incorporation and articles of organization. At no point during the trial, including the first and last days when the issue of Northeastern's charitable status was under discussion, did the plaintiffs address the subject. When, on the first day of trial, the judge explained how she would handle the matter, the plaintiffs voiced no question or concern about the judge's procedure. Particularly given the earlier colloquy between the judge and counsel, it was clear, on the last day of trial, that Northeastern offered the certificate of incorporation and articles of organization as evidence, and the plaintiffs did not object to, rebut, or otherwise question the submission. Despite the labeling of the documents as being solely for identification, the context in which these exhibits were discussed and submitted reveals that they were admitted in evidence, and that the plaintiffs were on adequate notice of their significance.

This evidence was sufficient to support a determination that Northeastern was entitled to the protection of the statutory cap.[4] When a corporation presents a charter that shows the corporation to be charitable, that charter is prima facie evidence of the corporation's charitable purpose and operation. See *Barrett* v. *Brooks Hosp., Inc.,* 338 Mass. 754, 757-758 (1959). The plaintiff submitted no evidence to show that Northeastern was not a charitable corporation.

Northeastern's entitlement to the protection of the statutory cap extends to the activities of the Lane Health Center because those activities were conducted in pursuit of Northeastern's

---

[4]Northeastern was initially incorporated as "Northeastern College of the Boston Young Men's Christian Association." Its name was eventually changed to "Northeastern University."

charitable purposes. See *Conners* v. *Northeast Hosp. Corp.*, 439 Mass. 469, 477-480 (2003). A corporate activity is sufficiently connected to the corporation's charitable purposes unless the reasons for conducting that activity are "primarily commercial," meaning that the activity is "entirely disconnected" from the charitable purposes of the corporation. *Missett* v. *Cardinal Cushing High Sch.*, 43 Mass. App. Ct. 5, 11 (1997). That is not the case here. We note in addition that the charitable immunity doctrine has previously been determined to apply to Northeastern's health care facility. See *Ricker* v. *Northeastern Univ.*, 361 Mass. 169, 172 (1972). The judge's handling of the issue was proper, and the plaintiffs could not reasonably have been misled by it. Northeastern established a prima facie case with respect to the charitable cap and, in the absence of countervailing evidence, would have been entitled to the benefit of the statutory cap had there been a sustainable verdict.

4. *Conclusion.* The order denying Northeastern's motion for judgment notwithstanding the verdict is reversed. Judgment shall enter for Northeastern.

*So ordered.*