Rup, Mary-Lou, J.
The plaintiff, Catherine Reynolds (“Reynolds”), filed this action against the defendant, the Williston Northampton School (“Williston”), seeking damages resulting from an alleged fall at an ice rink owned by Williston and located on its premises. Williston now moves for partial summary judgment asserting that G.L.c. 231, §85K, limits any damages Reynolds might recover on this suit to $20,000.00. For the following reasons, Williston’s motion shall be allowed.
BACKGROUND
The facts are taken from the record viewed in the light most favorable to the plaintiff. In 1841, the Massachusetts General Court incorporated Williston Seminary in Easthampton, Massachusetts, “for the intellectual, moral and religious education of youth.” In 1856, the Legislature permitted Williston Seminary to hold real property “and income from the same shall be applied to the same purposes” specified in the original act. In 1925, the school’s name was changed to Williston Academy. In 1970, Williston Academy merged with the Northampton School for Girls, Inc., a charitable corporation organized in 1949. On July 1, 1971, pursuant to another name change, Williston Academy became the Williston Northampton School. Since 1944, Williston has enjoyed tax-exempt status pursuant to §501(c) (3) of the Internal Revenue Code.
In 1964, Williston built the William J. Lossone Rink (the “rink”), since then used by Williston ice hockey teams. Williston also permits members of the local community to use the rink and certain of its other facilities. As relevant to the instant case, Williston has for many years permitted the Nonotuck Valley Hockey Association (“Nonotuck Valley”) to use the rink.
Reynolds’s child was a Nonotuck Valley youth participant, and on September 9, 2001, Reynolds was at the rink as a spectator. She claims that she fell and was injured that day because Williston “negligently and carelessly caused a floor-mat to protrude from the floor in a walkway between the stands and the locker rooms, so as to put the floor in an unsafe and unsuitable condition and unfit for persons to walk on it, and knew or should have known of its presence and failed within a reasonable time to remedy the unsafe condition.”
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue and that the moving party is entitled to a judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment, not bearing the burden of proof at trial, may demonstrate the absence of a triable issue by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
Williston argues that liability for Reynolds’s alleged injuries is limited to $20,000.00 pursuant to G.L.c. 231, §85K, which states:
It shall not constitute a defense to any cause of action based on tort brought against a corporation, trustees of a trust, or members of an association that said corporation, trust, or, association is or at *529 the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation, trust, or association, liability in any such cause of action shall not exceed the sum of twenty thousand dollars exclusive of interest and costs. Notwithstanding any other provision of this section, the liability of charitable corporations, the trustees of charitable trusts, and the members of charitable associations shall not be subject to the limitations set forth in this section if the tort was committed in the course of activities primarily commercial in character even though carried on to obtain revenue to be used for charitable purposes.
Because it seeks to limit the amount of damages for which it may be held liable, “[t]he burden is on [Williston] to prove that it is charitable and that the tort was committed during an activity in direct furtherance of [its] charitable purposes.” Goldberg v. Northeastern Univ., 60 Mass.App.Ct. 707, 711 (2004).
1. Classification as Charitable
“Charily in the legal sense ‘is not confined to mere almsgiving or the relief of poverty and distress, but has a wider signification, which embraces the improvement and promotion of the happiness of man’ . . .” Barrett v. Brooks Hosp., Inc., 338 Mass. 754, 759 (1959) (citations omitted).
An institution will be classed as charitable if the dominant purpose of its work is for the public good and the work done for its members is but the means adopted for this purpose. But if the dominant purpose of its work is to benefit its members or a limited class of persons it will not be so classed, even though the public will derive an incidental benefit from such work.
New England Legal Found. v. City of Boston, 423 Mass. 602, 609-10 (1996) (citation omitted). “The size of an institution is irrelevant to a determination of charitable status, as is the source of its revenue.” Conners v. Northeast Hosp. Corp., 439 Mass. 469, 475 (2003). “When a corporation presents a charter that shows the corporation to be charitable, that charter is prima facie evidence of the corporation’s charitable purpose and operation.” Goldberg, 60 Mass.App.Ct. at 712.
Here, Williston has presented evidence that it is a charitable corporation. The undisputed facts demonstrate that its primary purpose is to educate youth. Society as a whole benefits from the education of youth. Accordingly, Williston has established that it has a charitable purpose because the dominant purpose of its work, i.e., education, is for the public good.
2. Did the alleged tort occur during an activity which is in direct furtherance of Williston’s charitable purposes?
Reynolds alleges that Williston’s activity of renting the rink to Nonotuck Valley was primarily commercial in nature and was not carried on to directly accomplish Williston’s charitable purpose. On its part, Williston argues that it did not engage in commercial activity by renting its rink and, furthermore, that renting the rink to youth groups “was tethered” to Williston’s charitable purpose of furthering the education of youth and was not primarily commercial.
In an affidavit filed in support of its position, Williston’s Chief Financial Officer (“C.F.O.”) Charles McCullagh, Jr. (“McCullagh”) asserts that Nonotuck Valley rented the rink for $170.00 per hour in 2001, and that revenues from renting the rink to Nonotuck Valley and other groups are about $151,000.00 per year. McCullagh Aff., 14. According to McCullagh, the $170 per hour rink rental rate “is below market-rate for the use of such a facility, and falls well below Williston’s for actual costs of building, maintaining and staffing such a facility],]” and that revenue “derived from facility rentals campus-wide is well less than 2% of Williston’s receipts, as necessary to maintain Willistoris tax exempt status.” Id. Reynolds disputes that the hourly rental rate is below market value and generally disputes Williston’s assertion that the amount of revenue generated by rentals of its facilities does not affect its status as a charitable corporation.
If a court determines that the challenged activity directly accomplishes an entity’s charitable purpose^), “it [is] not necessary for the judge to consider whether those activities were ‘primarily commercial in character.’ ” Conners, 439 Mass. at 478. “If a charity’s activity [directly accomplishes its charitable purposes], which is a question of fact, the activity, ipso facto, is subject to the limitation on liability” and “[n]o further inquiry is necessary.” Id. at 479.
When analyzing whether the activity of renting the rink “directly accomplishes” Williston’s charitable purposes, the court must also bear in mind that the activity generated revenue for Williston. See id. at 478 (“The two considerations [(i.e., ’accomplished directly’ and ’primarily commercial’)] denoted in [G.L.c. 231, §85K] are not independent”). Here, Williston acknowledges that it generates some revenue by renting to Nonotuck Valley and other groups. The analysis does not end there, however, because “[gjenerating revenue does not alone mean that an activity is ‘primarily commercial.’ ” Missett v. Cardinal Cushing High Sch., 43 Mass.App.Ct. 5, 11 (1997). As the Supreme Judicial Court made clear in Conners, “[t]he second sentence of §85K (“primarily commercial”) clarifies the Legislature’s intent in circumstances where the questioned activity of a charity is one that generates revenue: that sentence directs the fact finder to consider, among other things, whether the activity is a moneymaking enterprise merely designed to keep the charity afloat, in which case the limitation does not apply, or whether the revenue is generated by an activiiy accomplishing the purpose of the charity.” Conners, 439 Mass. at 479. If the activity “is merely to generate *530 revenue,” the activity “must be analyzed as ‘commercial’ rather than ‘charitable.’ ” Harlow v. Chin, 405 Mass. 697, 715 (1989) (emphasis supplied). See Proctor v. N. Shore Cmty. Arts Found., 47 Mass.App.Ct. 372, 377 (1999) (summary judgment with respect to charitable immunity affirmed because the activity in question was incidental to the defendant’s primary activities and that the activity was not formed with the intent to raise revenue for the defendant). That said, “an activity is ‘primarily commercial’ only when it is ‘entirely disconnected’ from the charity’s purposes.” Missett, 43 Mass.App.Ct. at 11.
In determining if the activity directly accomplished Williston’s charitable purposes, the court considers, among other things, Williston’s intentions with respect to renting the rink to Nonotuck Valley and other groups, see Proctor, 47 Mass.App.Ct. at 377, including whether rentals were merely designed to keep the school “afloat” or whether the revenue generating activity served to accomplish Williston’s charitable purpose. See Conners, 439 Mass. at 479. Williston contends that it employs full-time faculty and staff, houses students, maintains facilities for classrooms and other education-related activities, and offers students a full range of athletic and extracurricular opportunities, and, consequently, that it needs more than the revenue derived from leasing or renting the rink “to keep it afloat.”[1] Williston also maintains that it derives only a very minor part of its income from renting the rink to communiiy groups. See McCullagh Aff., ¶4 (revenue from campus-wide facility rentals “is well less than 2% of Williston’s receipts, as necessary to maintain Williston’s tax exempt status!,]”). Reynold disputes Williston’s assertions, but she has submitted no specific evidence in support of her contentions.[2]
Furthermore, in determining whether permitting Easthampton youth who do not attend Williston to use its facilities fits within the purpose for which Williston was incorporated — “for the intellectual, moral and religious education of youth" — the court bears in mind that “[education is a broad and comprehensive term.” Mount Herman Boys’ Sch. v. Inhabitants of Gill 145 Mass. 139, 146 (1887). “Education maybe particularly directed to either the mental, moral, or physical powers or faculties, but in its broadest and best sense it relates to them all." Id. By allowing Nonotuck Valley and other groups to rent the rink, Williston is fostering the participation of youth in athletics which, in turn, play a role in the “intellectual and moral” education and development of youth. See id. It follows that renting the rink to Nonotuck Valley and other groups is not entirely disconnected from Williston’s charitable purpose. See Missett 43 Mass.App.Ct. at 11.
Accordingly, partial summary judgment is appropriate and Reynolds’s recovery of damages, if any, will be limited to $20,000.00 pursuant to G.L.c. 231, §85K. See Goldberg, 60 Mass.App.Ct. at 711.
ORDER
For the reasons discussed above, it is ORDERED that the defendant’s motion for partial summary judgment be ALLOWED.

 In support of her position, Reynolds cites Phipps v. Aptucxet Post #5988 V.F.W. Bldg. Ass’n, Inc., 7 Mass.App.Ct. 928 (1979). However, in that case, the Appeals Court indicated that “[t]he evidence showed that funds derived from the [activity] constituted eighty-five to ninety percent of the defendant’s income and were used primarily to pay mortgage and overhead expenses on the defendant’s building!,]” and, as a consequence, “the jury could have found that the defendant was not engaged in an activity directly within any alleged public charitable purpose at the time the accident occurred, but was engaged in a primarily commercial activity, and thus was not entitled to the defense of charitable immunity.” Phipps, 7 Mass.App.Ct. at 930. Here, the evidence before the court indicates that funds from renting the rink furnish only a very small amount of income to Williston. See McCullagh Aff., ¶4.

 Reynolds contends that Williston has used its rental revenue to build, maintain and staff the rink but presents no supporting evidence.