NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-125

MARGARET L. DONOVAN & another[1]

vs.

BRIGHTVIEW SENIOR LIVING, LLC, & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Margaret L. Donovan and Gail D. Hartwell, as the personal representative of the estates of Constance Dodge and John Dodge, filed a complaint against the defendants, Brightview Senior Living, LLC, and SHP IV Concord River, LCC, doing business as Brightview Concord River (collectively, Brightview or defendants).  In their amended and substituted complaint, the plaintiffs raised claims of violations of G. L. c. 93A, breach of contract, negligence, wrongful death, and infliction of emotional distress in connection with the Dodges'

_____

[1] Gail D. Hartwell, personal representative of the estate of Constance Donovan Dodge and the estate of John Brooks Dodge.

[2] SHP IV Concord River, LCC, doing business as Brightview Concord River.

residency at the Brightview Concord River community.  A Superior

Court judge allowed the defendants' motion for summary judgment

as to all claims except the G. L. c. 93A claim.  Following the

dismissal of the c. 93A claim at trial, judgment on the directed

verdict entered, and the plaintiffs appealed.[3]  We affirm.

Background.[4]  In 2014, the Dodges sought residency at

Brightview Concord River, an assisted living residence (ALR),

and, after medical screenings and assessments, were accepted.

Prior to moving in, the Dodges executed an "Assisted Living

Residency and Service Agreement" containing many attachments and

---

[3] Although all claims have been adjudicated, no final
judgment entered in the Superior Court.  The plaintiffs appealed
from the order granting summary judgment and from the November
27, 2023 judgment on the directed verdict on count I for the
defendants.  Neither party raised the issue, and both treated
the November 27, 2023 judgment as the "final" judgment.  Where
no meaningful purpose would be served by a remand, we proceed to
the merits.  See GTE Prods. Corp. v. Stewart, 421 Mass. 22, 24
n.3 (1995); Tiger Home Inspection, Inc. v. Director of the Dep't
of Unemployment Assistance, 101 Mass. App. Ct. 373, 374 n.1
(2022).

[4] The version of the "Joint Statement of Facts" filed in
support of the motion for summary judgment, and included in the
record appendix on appeal, does not contain the plaintiffs'
responses thereto.  At oral argument the parties disputed
whether a version containing the plaintiffs' responses was filed
and considered by the motion judge in the Superior Court.  In
any event, the only version included in the record appendix is
the unopposed version, and we need not look beyond the record
provided to us on appeal.  See Chokel v. Genzyme Corp., 449
Mass. 272, 279 (2007) ("When a party fails to include a document
in the record appendix, an appellate court is not required to
look beyond that appendix to consider the missing document").

exhibits (residency agreement), the "Assisted Living & Wellspring Village Disclosure Statement," and a "Disclosure" form acknowledging that they had received a number of documents, including "Assisted Living in Massachusetts:  A Consumer's Guide" (consumer guide). The residency agreement stated two things explicitly.  First, residents could pay Brightview to provide a limited amount of individual care for daily tasks including bathing, dressing, dining, and eating.  Second, residents were responsible, at their own cost, for retaining physicians and other appropriate medical care for their own health needs.  The parties agree that Brightview was not, and currently is not, a medical provider or healthcare facility.

Some months after moving into the facility, Mrs. Dodge was admitted to the hospital for chronic back pain and subsequently moved to a rehabilitation center.  Based on a reassessment of her needs, Brightview informed Mrs. Dodge that she could not return to Brightview unless she hired a private aide, as she needed two people to assist her in transferring out of bed, to a restroom, and into a chair, and Brightview did not provide two-person assist services.  Even with a private aide, Mrs. Dodge's health continued to decline to the point where Brigthview could not meet her needs.  In 2015, Mrs. Dodge left Brightview for a more appropriate facility, and Mr. Dodge moved out soon

3

thereafter.  The Dodges passed away sometime after moving out of Brightview Concord River.

The plaintiffs subsequently brought various claims, which were dismissed on the defendants' motion for summary judgment and on the defendants' motion for directed verdict at trial.  On appeal, the plaintiffs challenge only the judge's dismissal of their claims for breach of contract, negligence, and infliction of emotional distress on summary judgment.[5]

Discussion.  1.  Standard of review.  "We review the allowance of a motion for summary judgment de novo without deference to the motion judge's reasoning."  All Am. Ins. Co. v. Lampasona Concrete Corp., 95 Mass. App. Ct. 79, 80 (2019).  In reviewing a motion for summary judgment, we must determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law."  Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).  See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  A "genuine" dispute about a material fact exists when

---

[5] The plaintiffs stated in their brief that they do not appeal from the allowance of summary judgment on the wrongful death claim.  In addition, they do not address the allowance of the motion for directed verdict on the G. L. c. 93A claim, and thus that issue is deemed waived.  See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 35 n.1 (2005).

4

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and a fact is "material" when "it might affect the outcome of the suit under the governing law" (quotations and citation omitted). Dennis v. Kaskel, 79 Mass. App. Ct. 736, 740-741 (2011).

2. Breach of contract. The plaintiffs argue that the judge erred in granting summary judgment on their breach of contract claim because the contract was ambiguous as to whether Brightview promised that the Dodges would be able to "age in place" together regardless of their medical needs, and thus extrinsic evidence was admissible to address this ambiguity. Specifically, the plaintiffs argue that, where the consumer guide was integrated into the parties' agreement and informed residents that they should consider certain questions before signing a residency and service agreement, the "answers" to those questions are also integrated in the agreement, rendering the contract language "ambiguous" and in need of extrinsic evidence. The parol evidence rule, however, bars introduction of antecedent or contemporary oral agreements to contradict, vary, or broaden the terms of an integrated, unambiguous writing. See Winchester Gables, Inc. v. Host Marriott Corp., 70 Mass. App. Ct. 585, 591 (2007). The hypothetical answers to the questions posed in accordance with the consumer guide would

5

necessarily be oral agreements that could contradict, vary, or broaden the terms of the written residency agreement. Accordingly, these hypothetical answers would be barred by the parol evidence rule. See id.

Supporting our conclusion that the parties intended to be bound by the unambiguous terms of the contract, the residency agreement includes an integration clause, which states: "This Agreement (which includes all exhibits and attachments) contains the entire agreement between Resident and [Brightview], and supersedes all prior agreements and representations[.]" "Generally, contracting parties are understood to have included an integration clause in their written agreement with the intent to preclude the subsequent introduction of evidence of preliminary negotiations or side agreements" (quotation and citation omitted). Realty Fin. Holdings, LLC v. KS Shiraz Manager, LLC, 86 Mass. App. Ct. 242, 247-248 (2014). Thus, at least in the absence of any evidence to the contrary, the integration clause establishes that the parties intended to prohibit the consideration of parol evidence to contradict, vary, or broaden the terms of unambiguous language in the contract. See id. See also Winchester Gables, Inc., 70 Mass. App. Ct. at 591.

Because the contract unambiguously contradicted the plaintiffs' claim that the Dodges would be able to age in place regardless of their needs, and parol evidence was inadmissible on that issue, the judge did not err in granting summary judgment for the defendants on the breach of contract claim.[6]

3. Negligence. Although the plaintiffs' pleading and briefing of the negligence claim was sparse, they claim that Brightview owed the Dodges "a duty of care to provide competent custodial care and services," Brightview breached that duty, which caused the Dodges to suffer "repeated incidents and harm," and expert testimony was not required on the standard of care and any deviation from it. On this record, the plaintiffs have failed, as a matter of law, to create any genuine issue of material fact regarding a negligence claim.

The judge analogized the duty owed by the defendants to the standard of care a university health care facility owes its student patients, citing Goldberg v. Northeastern Univ., 60 Mass. App. Ct. 707, 710 (2004). In Goldberg, a student visiting a university healthcare facility on a Saturday was diagnosed and

_____

[6] The plaintiffs argue, alternatively, that putting aside parol evidence, there is a disputed issue of material fact regarding the plaintiffs' breach of contract claim. Because that argument is raised for the first time on appeal, it is thus not properly before us. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).

7

treated for influenza by a registered nurse.  Id. at 708-709.
Less than two weeks later, the student died of acute anemia
triggered by acute myelogenous leukemia.  Id. at 709.  The
parents alleged negligence on the part of the university,
claiming that the director of the facility staffed the facility
with only registered nurses on the weekend despite knowing that
registered nurses were not allowed to make medical diagnoses.
Id. at 710.  We concluded that "the subject of establishing,
staffing, and operating a health care center, including
determinations regarding adequate staff configurations on
weekends, involves quintessentially medical judgments that are
not matters with which a lay jury is likely to be acquainted,"
and therefore a claim of negligence required expert testimony.
Id.  In comparing this case to Goldberg, the judge noted that
Brightview was not a healthcare provider, but found it
significant that ALRs like Brightview are "operated with
professional input from various healthcare providers" and are
"overseen by the Executive Office of Elder Affairs."
Accordingly, the judge concluded that "the standard of care
applicable to [ALRs], and whether Brightview breached that
standard in connection with the care and services it provided to
Mr. and Mrs. Dodge, is a matter beyond the ken of ordinary
layperson jurors."  Therefore, the judge concluded that the

plaintiffs' failure to proffer expert evidence on the standard of care warranted summary judgment for the defendants.

On appeal, the plaintiffs urge us to distinguish Goldberg on the basis that the facility in Goldberg was a medical provider and the plaintiffs' complaint against Brightview did not stem from "medical judgment[s]."  To be sure, the plaintiffs' amended and substituted complaint alleged that the defendants breached a duty "to provide competent custodial care and services," not medical treatment.  The plaintiffs argue that "competent custodial care and services" of an ALR are within the common knowledge of the average layperson.  On the facts of record before us in the present case, we disagree.

a.  The regulatory framework applicable to ALRs.  The Supreme Judicial Court has recognized that ALRs "fall within a 'spectrum of living alternatives for the elderly in the commonwealth.'"  Ryan v. Mary Ann Morse Healthcare Corp., 483 Mass. 612, 618 (2019), quoting St. 1994, c. 354, § 1.  The purpose of ALRs is to provide "services well beyond what would be available at a regular apartment complex, but short of the care and supervision at a nursing home."  Ryan, supra.

We have similarly recognized that the "personal care services" provided by ALRs are integral to the ALR purpose. "Although we think the personal care services to be provided

9

assisted living residents are less intensive than the services provided in nursing home facilities[,] . . . . [t]hese services cannot be separated from the residential purpose of an assisted living residence:  If the services are not provided, the facility is not an assisted living residence." APT Asset Mgt., Inc. v. Board of Appeals of Melrose, 50 Mass. App. Ct. 133, 142-143 (2000).  Moreover, the "personal care services" ALRs provide are subject to various state regulations.  For example, "ALRs . . . must meet minimum management and staffing qualifications and adhere to certain staff training requirements." Ryan, 483 Mass. at 619.  See G. L. c. 19D, § 2 (ix); 651 Code Mass. Regs. §§ 12.06, 12.07 (2006 & 2015).  These qualifications include experience working with elders or persons with disabilities, knowledge of aging and disability issues, "appropriate qualifications to perform the job functions assigned to them," and so forth.  See 651 Code Mass. Regs. § 12.06 (2015).[7]  The training must "reflect current standards of practice and care," and "[i]nstructors and facilitators shall be appropriately qualified by training or demonstrated experience."  651 Code Mass. Regs. § 12.07 (2006).

---

[7] The quoted language from the regulation was added on January 30, 2015.

10

Finally, nurses must perform the initial screenings and assessments of residents to determine whether they are a suitable fit for the facility and then develop each resident's individualized service plan alongside the facility's service coordinator.  See 651 Code Mass. Regs. §§ 12.04(6)(a), 12.04(7) (2015).  Such plans must describe the individualized needs of each resident, including the frequency and duration of services, and document the provision of such services through written progress reports.  See G. L. c. 19D, §§ 2, 12.

b.  <u>The purpose of expert testimony in negligence cases</u>. "The purpose of expert testimony is to assist the trier of fact in understanding evidence or determining facts in areas where scientific, technical, or other specialized knowledge would be helpful."  <u>Commonwealth</u> v. <u>Pytou Heang</u>, 458 Mass. 827, 844 (2011).  Expert testimony is required for subjects that a lay juror would not "be expected to understand in many circumstances without guidance from an expert."  <u>Providence & Worcester R.R.</u> v. <u>Chevron U.S.A. Inc</u>., 416 Mass. 319, 323 (1993).  However, where information lies "within 'general human knowledge and experience,'" expert testimony is not required.  <u>Bailey v. Cataldo Ambulance Serv., Inc.</u>, 64 Mass. App. Ct. 228, 236 n.6 (2005), quoting <u>Lovely's Case</u>, 336 Mass. 512, 516 (1957).

11

If a plaintiff's claim depends on an issue requiring expert testimony, the plaintiff's failure to proffer such expert evidence warrants dismissal on summary judgment.  See Santiago v. Rich Prods. Corp., 92 Mass. App. Ct. 577, 585 (2017) (affirming summary judgment for defendants on negligence claim because of failure to proffer expert evidence on medical causation of harm).

c.  Analysis.  The plaintiffs' negligence claim alleges that Brightview breached a duty of care to the Dodges relating to the provision of services and staffing.  This claim hinges on an understanding of, among other things, the existence and adequacy of the Dodges' individualized service plans, whether Brightview's staffing levels were reasonable and appropriate, and whether the staff was properly qualified to execute the Dodges' service plans.  Given that these issues are all the subject of the ALR statute and State regulations, which are designed to ensure reasonable and appropriate care of residents, it is necessary to determine whether Brightview complied with this statute and these regulations in its care for the Dodges to determine whether Brightview breached its duty of care to the Dodges.  We believe these issues are a matter of "specialized knowledge," Pytou Heang, 458 Mass. at 844, that is "beyond the ken of an ordinary juror" and therefore requires expert

12

testimony.  Santiago, 92 Mass. App. Ct. at 585.  Because the plaintiffs did not proffer expert testimony on this subject, the allegation of negligence was "merely speculative," and thus summary judgment properly entered on the negligence claim.  See Goldberg, 60 Mass. App. Ct. at 710.

4.  Infliction of emotional distress.  The plaintiffs argue that the defendants owed Donovan a duty of care because she was the Dodges' health care proxy and agent and had "first hand" dealings with Brightview about their care.  They further argue that the defendants breached that duty thereby causing Donovan emotional distress.[8]  The plaintiffs assert generally and without elaboration that the source of this duty is "existing social values and customs."  See Williams v. Stewart Health Care Sys., LLC, 480 Mass. 286, 291 (2018).

We note that whether a defendant owes a plaintiff a duty of care in specific circumstances is a question of law.  See Lanier v. President & Fellows of Harvard College, 490 Mass. 37, 44-45 (2022) ("Whether a defendant has a duty of care to the plaintiff

---

[8] In their complaint and opposition to summary judgment, the plaintiffs did not specify whether they were alleging intentional infliction of emotional distress or negligent infliction of emotional distress.  At oral argument, the plaintiffs conceded that the evidence did not satisfy the requirements of intentional infliction of emotional distress, and we thus limit our discussion to negligent infliction of emotional distress.

in the circumstances is a question of law . . . , to be determined by reference to existing social values and customs and appropriate social policy [citation omitted]").  On this record, there is no basis to conclude that the defendants owed Donovan a duty of care arising out of their relationship with and obligation to care for her parents.

First, the plaintiffs have cited no legal precedent for their claim that an ALR like Brightview owes a duty to the family members of residents.  Second, the plaintiffs have cited to no specific social value, custom, or social policy to support their argument.  Third, the plaintiffs do not specify in the summary judgment record any acts or omission by the defendants that violate this alleged duty of care.  Accordingly, their argument amounts to little more than a bald assertion of error and "provide[s] an insufficient basis for this court [to] reasonably consider [their] claims."  Kellogg v. Board of Registration in Med., 461 Mass. 1001, 1003 (2011) ("Further, Mass. R. A. P. 16 [a] [4], as amended, 367 Mass. 921 [1975], requires that briefs submitted to this court 'shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.' . . . Briefs that limit themselves to 'bald assertions of error' that

14

'lack[] legal argument . . . [do not] rise[] to the level of appellate argument' required by rule 16").  See Mass. R. A. P. 16 (a) (9), as appearing in 491 Mass. 1628 (2019). Accordingly, we affirm summary judgment on this claim.[9],[10]

The October 25, 2022 order allowing the defendants' motion for summary judgment on all counts except the G. L. c. 93A count is affirmed.  The November 27, 2023 judgment on the directed verdict on the c. 93A count is affirmed.  The case is remanded

---

[9] The plaintiffs also argue that entry of summary judgment was premature because discovery was not complete.  Having reviewed the arguments made by the plaintiffs on appeal, and those made in the Superior Court pursuant to Mass. R. Civ. P. 56 (f), 365 Mass. 822 (1974), including the affidavit of counsel submitted in support of that argument, we conclude that the claim is unavailing.  To prevail on such a theory, a plaintiff is required, among other things, to "show to the best of his ability what facts are within the movant's exclusive knowledge or control; what steps have been taken to obtain the desired information pursuant to the discovery procedures under the [Massachusetts] Rules [of Civil Procedure]; and that he is desirous of taking advantage of these discovery procedures." Alphas Co. v. Kilduff, 72 Mass. App. Ct. 104, 109-110 (2008), quoting A. John Cohen Ins. Agency, Inc. v. Middlesex Ins. Co., 8 Mass. App. Ct. 178, 183 (1979).  Rather than meet this burden, the plaintiffs simply asserted that "questions remain unanswered as to the Defendants['] duties and breach, and the extent of their negligence, and corresponding damages" and that "key documents have still not been produced."  We discern no abuse of discretion.  Cf. Carroll v. Select Bd. of Norwell, 493 Mass. 178, 195 (2024) (no abuse of discretion in granting summary judgment without ordering further discovery where "the plaintiffs' responses did not specify what additional discovery they needed, nor how much time they needed to complete it").

[10] The defendants' request for costs for the expense incurred in obtaining the transcript of the hearing on the motion for summary judgment is denied.

to the Superior Court for the entry of a final judgment in favor of the defendants.

                              So ordered.

                              By the Court (Neyman,
                                Ditkoff & Wood, JJ.[11]),

                              Clerk

Entered:  May 28, 2025.

---

[11] The panelists are listed in order of seniority.